Terzian Law Group,
a professional corporation
TAMAR TERZIAN SBN 254148
tamar@terzlaw.com
1122 E. Green Street
Pasadena, CA 91106
Direct: (626) 826-1271
*Attorneys for Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

| | |
|---|---|
| In re<br><br>WESTSIDE TOW AND TRANSPORT, INC.,<br><br>Debtor. | CASE NO. 9:25-bk-11352 RC<br><br>Chapter 11<br><br>**DEBTOR'S DISCLOSURE STATEMENT DESCRIBING ITS CHAPTER 11 PLAN OF REORGANIZATION**<br><br>Disclosure Statement Hearing<br>DATE:   April 22, 2026<br>TIME:    1:00 p.m.<br>PLACE: Courtroom 201<br>          1415 State Street<br>          Santa Barbara, CA 93101<br><br>Confirmation Hearing<br>DATE:   TBD<br>TIME:    TBD<br>PLACE: Courtroom 201<br>          1415 State Street<br>          Santa Barbara, CA 93101 |

**TO THE HONORABLE RONALD A. CLIFFORD III, UNITED STATE BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; SECURED CREDITORS, UNSECURED CREDITORS AND OTHER INTERESTED PARTIES:**

**I.**

**<u>INTRODUCTION</u>**

### A. <u>Background</u>

Westside Tow & Transport, Inc. (the "<u>Debtor</u>") is the debtor and debtor in possession in the above captioned chapter 11 bankruptcy case (the "<u>Case</u>").  The Debtor commenced the Case on October 8, 2025 (the "<u>Petition Date</u>") by filing a voluntary chapter 11 petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., (the "<u>Bankruptcy Code</u>").

Chapter 11 allows the Debtor to propose a plan of reorganization.  The Debtor is the party proposing a plan, which is the document being sent to you in the same envelope as this document (the "<u>Plan</u>").  **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT DESCRIBING THE PLAN** (the "<u>Disclosure Statement</u>").   The Disclosure Statement is set to be approved by the Court and is provided to help you understand the Plan and make an informed decision regarding whether to vote to accept or reject the Plan.

Throughout the Case, the Debtor has managed and continues to manage its affairs as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Case.

Membership interests in the Debtor are held solely by Peter N. Wambaa.

This is a plan of reorganization.  Through the Plan, the Debtor seeks to restructure its business by utilizing the proceeds from continued operations of both offices to accomplish payments under the Plan.

### B. <u>Purpose of This Document</u>

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to

2

confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

> **(1)     WHO CAN VOTE OR OBJECT,**
>
> **(2)     WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed, AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**
>
> **(3)      THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**
>
> **(4)     WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**
>
> **(5)     WHAT IS THE EFFECT OF CONFIRMATION, AND**
>
> **(6)     WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court (the "Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  Any party can now solicit votes for or against the Plan.

**C. Deadlines to Voting and Objecting: Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT, IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE

PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

  **1.  Time and Place of the Confirmation Hearing**

  The hearing where the Court will determine whether or not to confirm the Plan is yet to be determined.

  **2.  Deadline for Voting For or Against the Plan**

  If you are entitled to vote, it is in your best interest to timely vote on the ballot that will be provided once the disclosure statement is approved.

  **3.  Deadline for Objecting to the Confirmation of the Plan**

  Objections to the confirmation of the Plan must be filed with the Court and served upon counsel to the Debtor.  This date is yet to be determined.

  **4.  Identify of Person of Contact for More Information Regarding the Plan**

  Any interested party desiring further information about the Plan should contact Tamar Terzian, 1122 E. Green Street, Pasadena, CA 91106, (818) 242-1100.

**D.  <u>Disclaimers</u>**

**PLEASE READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.  THIS DISCLOSURE STATEMENT CONTAINS THE ONLY AUTHORIZED STATEMENTS OR INFORMATION REGARDING THE PLAN.  ALL PREVIOUS STATEMENTS AND REPRESENTATIONS BY THE DEBTOR ARE EXPRESSLY SUPERSEDED BY THIS DISCLOSURE STATEMENT.**

The information contained in this Disclosure Statement is provided by the Debtor based on Debtor's books and records, financial statements and projections.  The Debtor represents that everything stated in this Disclosure Statement is true to the best of the Debtor's knowledge.  The Debtor's professionals who have assisted in the preparation of this Disclosure Statement have not independently verified the information set forth herein and make no representation as to its accuracy.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein, and neither delivery of this Disclosure Statement nor any exchange of rights made in connection with this Disclosure Statement shall, under any circumstances, create any implication that there has been no change in the facts set forth herein since the date this Disclosure Statement and the materials relied upon in preparation of this Disclosure Statement were compiled.  This Disclosure Statement may not be relied on for any purpose other than to assist in your decision regarding how to vote on the Plan, and nothing contained in this Disclosure Statement shall constitute or be deemed advice on the tax or other legal effects of the Debtor's reorganization on holders of Claims or Interests in connection with such reorganization.

## II.

## DEFINITIONS, INTERPRETATIONS AND RULES OF CONSTRUCTION

### A.  Definitions

For the purposes of this Disclosure Statement, the following terms shall have the meanings specified below.  Any capitalized term used in the Disclosure Statement that is not defined below, the body of the Plan or the Disclosure Statement, shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules.

1.	"Actions" means any action, other than Avoidance Actions, that arises prior to the Effective Date.

2.	"Administrative Claim" means any Claim, including but not limited to claims for compensation of professionals made pursuant to section 330 of the Bankruptcy Code, entitled to priority treatment under section 507(a)(2) of the Bankruptcy Code.

3.	"Administrative Claimant" means a Person that holds an Administrative Claim or Administrative Tax Claim.

4.	"Administrative Tax Claim" means a Claim under section 503(b)(1)(B) of the Bankruptcy Code.

5

5.      "Allowed Administrative Claim" means an Administrative Claim that is an Allowed Claim.

6.      "Allowed Administrative Tax Claim" means an Administrative Tax Claim that is an Allowed Claim.

7.      "Allowed Claim" means any Claim in the amount and classification set forth in a proof of claim filed with the Court within the time fixed by the Court, or in the absence of such filing, as set forth in the Debtor's schedules of liabilities filed in the Case, unless the Claim was listed in the schedules as disputed, contingent or unliquidated, in any event as to which no objection to the allowance thereof has been interposed within the applicable period fixed in the Plan, the Confirmation Order, or order of the Bankruptcy Court, or as to which an order of the Court provides for the allowance of such Claim.  Multiple proofs of claim of the same Class filed by a Claimant shall be aggregated and shall constitute a single Claim.

8.      "Allowed General Unsecured Claim" means a General Unsecured Claim that is an Allowed Claim.

9.      "Allowed Priority Claim" means a Priority Claim that is an Allowed Claim.

10.     "Allowed Priority Tax Claim" means a Priority Tax Claim that is an Allowed Claim.

11.     "Allowed Secured Claim" means a Secured Claim that is an Allowed Claim.

12.     "Allowed Secured Tax Claim" means an Allowed Secured Claim that is a Claim which meets the description of an Unsecured Claim of a governmental unit under section 507(a)(8) of the Bankruptcy Code, but for the secured status of that Claim.

13.     "Avoidance Actions" means preference and other avoidance actions under 11 U.S.C. §§ 544, *et seq.*

14.     "Ballot" means the form distributed to each Claimant entitled to vote on the Plan on which is to be stated such Claimant's acceptance or rejection of the Plan.

15.     "Bankruptcy Code" means 11 U.S.C. § 101, *et seq.*, together with any amendments thereto that are applicable to the Case.

6

**16.** "Bankruptcy Court" means the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division, before which the Case is pending or, in the event such court ceases to exercise jurisdiction over the Case, such court or adjunct or unit thereof that exercises jurisdiction over the Case in lieu of the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division.

**17.** "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and any amendments thereto.

**18.** "Business Day" means any day which is not a Saturday, a Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

**19.** "Case" means the chapter 11 bankruptcy case of the Debtor, designated as Case No. 9:25-bk-11352 RC, pending before the Court.

**20.** "Cash" means cash and cash equivalents, including, but not limited to, checks or similar forms of payment or exchange.

**21.** "Claim" or "Claims" is prescribed the same meaning as 11 USC § 101(5) of the Bankruptcy Code.

**22.** "Claimant" means a Person that holds a Claim.

**23.** "Class" or "Classes" means a grouping or groupings of Claims or Interests as designated in Section II.C of the Plan.

**24.** "Confirmation Date" means the date of the entry of the Confirmation Order on the Bankruptcy Court's docket.

**25.** "Confirmation Hearing" means the hearing conducted by the Court with regard to confirmation of the Plan as such hearing may be continued from time to time.

**26.** "Confirmation Order" means the order of the Court confirming the Plan.

**27.** "Debtor" means Westside Tow & Transport, Inc.

**28.** "Disbursing Agent" means the entity designated to disburse payments in accordance with the Plan and, in this Case, is the Reorganized Debtor Westside Tow & Transport, Inc.

**29.**    "Disclosure Statement" means the Debtor's Disclosure Statement which describes the Plan.

**30.**    "Disputed Claims" means Claims against the Debtor or the Estate as to which an objection has been filed by the deadline set forth in the Plan (or such other date as may be fixed by the Court) and which objection has not been withdrawn, dismissed or resolved by the entry of a Final Order or otherwise.

**31.**    "Effective Date" means seven days after the Confirmation Order becomes a Final Order.

**32.**    "Estate" means the bankruptcy estate created upon commencement of the Case pursuant to section 541(a) of the Code.

**33.**    "Final Order" means an order of the Court that has been entered and either:

    a.    **The time for appeal from such entered order has expired with no appeal having been filed timely; or**

    b.    **Any appeal that had been filed timely has been dismissed or otherwise finally determined.**

**34.**    "Funds" means any other proceeds for distribution under the Plan including, without limitation, money borrowed from third parties, subject to Court approval.

**35.**    "General Unsecured Claim" means all Unsecured Claims against the Debtor, except for Administrative Claims and Tax Claims, including all Claims included in Class 5 under the Plan.

**36.**    "Impaired" shall have the meaning provided in section 1124 of the Bankruptcy Code.

**37.**    "Interest," "Interests," "Interest Holder" or "Interest Holders" means any Person with an equity interest in the Debtor.

**38.**    "Net Proceeds" means the funds available based upon continued operations.

**39.**    "Person"  is prescribed the same meaning as 11 U.S.C. § 101(41) of the Bankruptcy Code.

8

40.  "Petition Date" means October 8, 2025.

41.  "Plan" means the chapter 11 plan proposed by the Debtor and filed in the Case, in its present form or as it may be amended, modified or supplemented from time to time.

42.  "Priority Claim" means any Claim entitled to priority treatment pursuant to section 507 of the Bankruptcy Code, except for Administrative Claims, Administrative Tax Claims and Priority Tax Claims.

43.  "Priority Tax Claim" means a Claim entitled to priority treatment pursuant to section 507(a)(8) of the Bankruptcy Code.

44.  "Property of the Estate" has the meaning provided by section 541 of the Bankruptcy Code.

45.  "Secured Claim" means a Claim that is secured by a UCC- Statement on Property of the Estate.

46.  "Unimpaired" means that the Class is treated under the Plan in accordance with section 1124(1) of the Bankruptcy Code.

47.  "Unsecured Claim" means a Claim that is not secured by any Lien on Property of the Estate.

B.  **Interpretation, Computation of Time and Governing Law**

1.  **Undefined Terms**

Any term used in the Disclosure Statement that is not defined in the Disclosure Statement, either in Section II.A above (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

2.  **Rules of Interpretation**

For the purposes of the Disclosure Statement:

a.  Whenever, from the context, it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural.

9

**b.**      Any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

**c.**      Any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified, or supplemented as of the Confirmation Date.

**d.**      Unless otherwise specified in a particular reference in the Plan, all references in the Plan to Sections, Articles or Exhibits are references to Sections, Articles and Exhibits of or to the Plan.

**e.**      Unless otherwise specified in a particular reference in the Plan, the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than only to a particular paragraph, subparagraph, or clause contained in the Plan.

**f.**      Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

**g.**      The provisions of the Plan will control over any description thereof contained in the Disclosure Statement.

**h.**      Any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply hereto.

**i.**      Except to the extent that federal law, including the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced for all purposes in accordance with, the laws of the State of California, without giving effect to any principles of conflict of laws thereof.

**j.**      All exhibits to the Plan are incorporated into the Plan and will be deemed to be included in the Plan, regardless of when they are filed.

### 3. **Computing Time Periods**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**III.**

**SUMMARY OF SIGNIFICANT EVENTS AND STATUS OF CHAPTER 11 CASE**

**A. The Debtor's Business**

The Debtor is a specialized transportation and towing company that provides a range of services to businesses in California and across the country. The Debtor provides services such as vehicle recovery, heavy duty towing to handle large vehicles, freight hauling, handling oversized or heavy loads that require specialized equipment. Additional services the Debtor provides is storage for vehicles and owns real property located at 9500 Arlington Avenue, Riverside, CA 92503 (the "Arlington Property"). Debtor has thirteen employees that assist in these services and the day-to-day operations. Debtor is current on its payroll obligations and regular expenses. Debtor has long term existing customers such as Mercedes Benz, Porsche, Honda, Kia and various other dealers. Debtor entered into several merchant cash advance agreements and other loan obligations that have become difficult to pay. The Debtor's principal assets as of the Petition Date consist of its cash-on-hand, accounts receivables, and the Arlington Property. The value of the Debtor's assets does not exceed $3.1.

**B. Significant Events Occurring Prior to the Petition Date**

The circumstances that precipitated this chapter 11 filing is the lack of receiving its account receivables and the merchant cash advance loans that would withdraw large amounts each month charging usurious interest rates.

**C. The Commencement of This Chapter 11 Case**

The Debtor filed a voluntary chapter 11 petition on October 8, 2025 to stop continued merchant cash advance loans from withdrawing its funds. The Debtor remains in possession of its assets and continues to manage its affairs as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

**D. The Debtor's Assets and Liabilities**

As of the commencement of this Case, the Debtor's assets consist the Arlington Property, its various trucks, office equipment and accounts receivables.

**E. Significant Events During the Bankruptcy**

1.    Bankruptcy Proceedings

The following is a chronological list of significant events which have occurred during this case:

2.    First Day Motions (Use of Cash Collateral)

On October 10, 2025, Debtor filed the following emergency motions: (1) Motion for Order Authorizing The Debtor to Use Cash Collateral on an Interim Basis Pending Final Hearing; and (2) Motion for Order Authorizing Debtor to Provide Adequate Assurance of Payment to Utility Service Providers (11 U.S.C. Sec. 366). Debtor entered into various stipulations with Secured Creditors as well as the United States Small Business Administration for the approval of use of cash collateral. On October 17, 2025, this Court approved and authorized the Debtor in part to use on an interim basis cash collateral and to provide adequate protection through October 22, 2025.

On October 17, 2025, Debtor thereafter filed a supplemental brief for use of cash collateral and supporting Declaration of Peter N. Wambaa. On October 24, 2025, the Court granted in part and denied in part interim use of Cash Collateral through October 29, 2025.

On October 27, 2025, Debtor and U.S. Small Business Administration ("SBA" entered into a stipulation for adequate assurance payments. On October 28, 2025, Debtor filed Declarations in further support of use of cash collateral.

On October 28, 2025, Debtor entered into stipulations with various secured creditors including Bell Bank (Docket No. 45) Continental Bank (Docket No. 46), and PNC Financial, LLC (Docket No. 47) for post-petition adequate protection payments. On November 3, 2025, this Court entered orders granting such agreed stipulations.

In addition, Harvest Business Bank the secured creditor on the Arlington Property requested at the cash collateral hearing to be paid adequate protection payments of the mortgage

that was included in Debtor's proposed budget.  While Debtor believes there is adequate equity in the Arlington Property, Harvest Business Bank represented there is no equity in the Arlington Property and therefore was entitled to adequate assurance payments.

On November 3, 2025, the Court entered an order authorizing use of cash collateral through and including November 19, 2025.

### 3. Notice of Setting Insider Compensation

On November 18, 2025, Debtor filed a notice of setting insider compensation to approve the salary of Mr. Peter N. Wambaa.  No objections were filed and sua sponte the Court extended deadlines in lieu of the government shutdown.

### 4. Schedules and Statement of Financial Affairs

On October 8, 2025, the Debtor filed its Schedule of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs (the "SOFA").  The Schedules and SOFA were amended on November 18, 2025.

### 5. Employment of Professionals

On November 17, 2025, Debtor filed an application to approve Terzian Law Group, APC as its general bankruptcy counsel.  No objections were filed by any parties.

The Court sua sponte set a hearing on the application to approve the Debtor's employment of **Terzian Law Group**, a professional corporation, to serve as the Debtor's general bankruptcy counsel in this case.

No other professionals have been retained to date.

### 6. Meeting of Creditors

On November 14, 2025, the Office of United States Trustee conducted the meeting of creditors, which was concluded.

### 7. Status Conference

The Debtor has had various status conferences where the Court has set deadlines as discussed below.

### 8. Setting the Bar Date

The Court set March 6, 2026, (the "Bar Date") as the last date for filing proofs of claim. Attached hereto as **Exhibit "D"** is a listing of all claims that have been scheduled and/or filed by creditors before the Bar Date.  The Debtor has reviewed most of the claims and to the extent there remains any dispute or objections, the Debtor will be filing objections to such claims.

9.     Other Legal Proceedings

No other legal proceedings are pending.

10.     Current and Historical Financial Conditions

Attached hereto as **Exhibit "A"** are copies of the Debtor's historical financial statements from November 2025 through February 2026.  Attached hereto as **Exhibit "B"** is Debtor's Schedule A/B listing its assets. Attached hereto as **Exhibit "C"** are the projected financial statements, on a monthly basis, from the estimated Effective date of July 2026 through July 2031.

F.  **Procedures Implemented to Resolve Financial Problems**

The Debtor has already significantly reduced its operating expenses to the extent the Debtor deems prudent and necessary.  What remains to be fixed is the Debtor's ability to restructure the current debt to make it a financially profitable, viable and healthy company.  As explained in this Disclosure Statement, the Plan is to continue to operate the Debtor and use net proceeds to support a plan of reorganization.

G.  **Summary of the Debtor Plan**

1.     The Effective Date of the Plan will be the first business day which is at least 7 days following the date the Bankruptcy Court enters the order confirming the Plan, unless there is a stay in effect in which case the Effective Date shall be the first business day after the stay is no longer in effect with respect to the Plan.

2.     The Plan will be funded from the cash flow of the businesses operations by the Reorganized Debtor.  Attached hereto as **Exhibit "C"** are the projected financial statements, on a monthly basis, from the estimated Effective date of July 2026 through July 2031.

3.     Under the Plan, there are fifteen classes of creditors and interest holders.

# IV.

## SUMMARY OF THE DEBTOR'S PLAN

### A.    Classification and Treatment

As required by the Bankruptcy Code, the Plan classifies Claims and Interests (if any) in various classes according to their right to priority.  The Plan states whether each Class of Claims or Interests is Impaired or Unimpaired.  The Plan provides the treatment each class will receive.

### B.    Unclassified Claims

Certain types of Claims are not required to be placed into voting classes.  Accordingly, such Claims are not classified.  They are not considered impaired and are not entitled to vote on the Plan because the Bankruptcy Code mandates how these particular Claims will be treated.  As such the Debtor has not placed the following claims in a class:

#### 1.    Administrative Claims

Administrative claims are claims for costs or expenses of administering the Case that are allowed under Bankruptcy Code section 507(a)(2).  The Bankruptcy Code requires that all Administrative Claims be paid on the Effective Date unless a particular Claimant agrees to a different treatment.

The following chart lists all of the Debtor's estimated Administrative Claims and their respective treatment under the Plan:

15

| *Name* | *Allowed to Date* | *Total (Estimated or as Filed)[1]* | *Paid By Debtor to Date* | *Total Estimated Required to Be Paid* | *Treatment* |
|---|---|---|---|---|---|
| **Terzian Law Group,** A Professional Corporation <br><br> General Bankruptcy Counsel to the Debtor | $0.00 | $55,000.00 | $15,000.00 | $40,000.00[2] | All unpaid fees and expenses allowed by the Court shall be paid in full on the later of: (a) the Effective Date; or (b) as agreed between the Debtor and Professional. |
| **Clerk's Office** Fees | $0.00 | $250.00 | $0.00 | $250.00 | Paid in full before or on the Effective Date. |
| **Office of the United States Trustee Fees** | $0.00 | $6,000 | $0.00 | $6,000 | Paid in full before or on the Effective Date. Amount to be determined depending on pending distributions for the quarter until plan is confirmed. |

With respect to professionals employed by the Estate, the Court must authorize the fees and expenses set forth above prior to payment of such fees and expenses. Each Administrative Claimant holding a Claim for fees and expenses for professional services rendered to the Estate must file and serve a properly noticed application for compensation and reimbursement of expenses, and the Court must rule on such application. Only the amount of fees and expenses authorized by the Court will be paid under the Plan.

---

[1]  All fees and expenses of professionals employed by the Debtor in this Case are subject to approval by order of the Court.

[2]  This is only an estimate and will change based upon the legal services required during this Case and upon what the Court ultimately awards. The Estate remains liable for all allowed legal fees and costs regardless of the estimates stated herein.

The Debtor estimates that the total amount of professional fees and administrative expenses it will need to pay is approximately $51,000.   As discussed in Section IV.D below, the Debtor will have sufficient funds to satisfy all Allowed Administrative Claims.

### 2.  Priority Tax Claims

Priority Tax Claims are certain unsecured income, employment, property and other taxes described by Bankruptcy Code section 507(a)(8).  The Bankruptcy Code requires that each holder of such Priority Tax Claim receive the present value of such claim in deferred cash payments, over a period not exceeding five (5) years from the Petition Date.  The following chart lists all of the Debtor's estimated Priority Tax Claims and their treatment under the Plan.

| *Description* | *Claim Amount[3] (As Filed)* | *Treatment* |
| --- | --- | --- |
| **County of Riverside Tax Collector** | (Approx.):  $78,000 | Payment of the Allowed Priority Tax Claim shall be made in monthly equal payments such that the Allowed Priority Tax Claim is repaid within five years from the Petition Date.  The first monthly payment shall be due on the first Business Day of the calendar following the Effective Date until paid in full.  Debtor anticipates monthly payments of $1,560. |

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured Claims are Claims secured by Liens on Property of the Estate.  The following chart lists the classes containing the Debtor's Secured Claims and their respective treatment under the Plan:

| *Class No.* | *Description* | *Insiders (Y/N)* | *Impaired (Y/N)* | *Treatment* |
| --- | --- | --- | --- | --- |
| 1 | **STELLANTIS FINANCIAL SERVICES c/o PERITUS PORTFOLI** Claim No. 4-1 (Approx.): | N | N (Creditor in this class is | • Debtor will continue to make the payment pursuant to the purchase finance agreement. |

---

[3]  Any Claim amounts set forth in this Plan shall not be construed as an admission that the Debtor concurs with such amounts and is subject to the Debtor's further review of and objection to (as is necessary) to any Claim. The Debtor expressly reserves the right to amend any of the Claim amounts set forth in this Plan.

17

| | | | | |
|---|---|---|---|---|
| | $55,014.06 | | not entitled to vote on the Plan) | |
| 2 | **TD Bank, N.A. Claim No. 7-1** (Approx.): $61,100.00 | N | N (Creditor in this class is not entitled to vote on the Plan) | • Debtor will continue to make the payment pursuant to the purchase finance agreement. |
| 3 | **U.S. Small Business Administration** **Claim No. 8-1** (Approx.): 2,180,116.32 | N | Y (Creditor in this class is entitled to vote on the Plan) | • Debtor objects that this claim is fully secured. The Debtor asserts that the SBA claim is partially unsecured with Debtor's assets. • The Allowed Secured Claim shall be paid within 30 years from the SBA Loan origination date, with the first payment of $9,840 due on the first of the month following the Effective Date, and continuing to be paid monthly until the maturity date of the loan. SBA will retain its UCC lien in the amount of $2,180,116.32. The Debtor reserves the right to object to this claim as there are insufficient assets to make the entirety of the claim secured. |
| 4 | **BMW Bank of North America c/o AIS Portfolio Service** **Claim No. 1** $119,931 | N | N (Creditor in this class is not entitled to vote on the Plan) | • Insider will make the payment of pursuant to the purchase finance agreement. |
| 5 | **BMW Bank of North America c/o AIS Portfolio Service** **Claim No. 2** $60,914.49 | N | N (Creditor in this class is not entitled to vote on the Plan) | • Insider will make the payment of pursuant to the purchase finance agreement. |

18

| 6 | **Westside Tow & Trucking, Inc. c/o Ramsaur Law P.C. – Continental Bank**<br><br>**Claim No. 10-1** (Approx.): $156,297.81 | N | N<br><br>(Creditor in this class is not entitled to vote on the Plan) | • Debtor will continue to make payments pursuant to the purchase finance agreement in the amount of $5,719.  Continental Bank will continue to retain its lien against its collateral. |
|---|---|---|---|---|
| 7 | **The Huntington National Bank C/O Eudora Arthur, Claim No. 12-1**<br><br> (Approx.):  **$68,385.69** | N | N<br><br>(Creditor in this class is not entitled to vote on the Plan) | • Debtor will continue to make the payment of pursuant to the purchase finance agreement. |
| 8 | **The Huntington National Bank C/O Eudora Arthur,**<br><br>**Claim No. 13-1**<br><br>(Approx.):  **$36216.14** | N | N<br><br>(Creditor in this class is not entitled to vote on the Plan) | • Debtor will continue to make the payment of pursuant to the purchase finance agreement. |
| 9 | **The Huntington National Bank C/O Eudora Arthur,**<br><br>**Claim No. 14-1**<br><br>(Approx.):  **$33,014.84** | N | N<br><br>(Creditor in this class is not entitled to vote on the Plan) | • Debtor will continue to make the payment of pursuant to the purchase finance agreement. |
| 10 | **Harvest Small Business Finance, LLC**<br><br>**Claim No. 18-1**<br><br>(Approx.):  $2,647,917.62<br>Arrears of $187,909.27 | N | Y<br><br>(Creditor in this class is not entitled to vote on the Plan) | • Debtor will continue to make the payment of pursuant to the purchase finance agreement in the monthly amount of $23,751.<br><br>• Arrears will be paid a pro-rata distribution over 5 years until paid in full.  Distribution will be 3,131 per month. |

| 11 | **JB Bostick- Mechanics Lien** <br> (Approx.): $120,254 | N | Y | • Creditor will be paid pro-rata distribution over 5 years until paid in full. Distribution will be 2,004 per month. |
|----|----|----|----|----|
| 12 | **PNC Financial (Scheduled Claims)** <br> (Approx.): $355,890 | N | N <br> (Creditor in this class is not entitled to vote on the Plan) | • Debtor will continue to make the payment of pursuant to the purchase finance agreement. |

## 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code sections 507(a)(3), (4), (5), (6) and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: The Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

| 13 | • **Internal Revenue Service** | N | Y <br> (Creditor in this class is entitled to vote on the Plan) | • Payment of the Allowed Priority Tax Claim shall be made in monthly equal payments such that the Allowed Priority Tax Claim is repaid within five years from the Petition Date, which would be from the Effective Date. Claim shall be paid in full within 24 months from the Effective Date of the Plan. |
|----|----|----|----|----|
| 14 | • **Franchise Tax Board** | N | Y <br> (Creditor in this class is entitled to vote on the Plan) | • Payment of the Allowed Priority Tax Claim shall be made in monthly equal payments such that the Allowed Priority Tax Claim is repaid within five years from the Petition Date, which would be from the Effective Date. Claim shall be paid in full within 24 months from the Effective Date of the Plan. |

20

| 15 | • **Employment Developmental Department** | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | • Payment of the Allowed Priority Tax Claim shall be made in monthly equal payments such that the Allowed Priority Tax Claim is repaid within five years from the Petition Date, which would be from the Effective Date.  Claim shall be paid in full within 24 months from the Effective Date of the Plan. |

### 3.    Class of General Unsecured Claims

General Unsecured Claims are Unsecured Claims not entitled to priority under Bankruptcy Code section 507(a).  The following chart identifies the Plan's treatment of the class containing all of the Debtor's General Unsecured Claims:

| Class No. | Description | Insider Y/N | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| 16 | **General Unsecured Claims**<br><br>**See Exhibit "D" to the disclosure statement filed concurrently for a list of all General Unsecured Claimants and all scheduled claims**<br><br>**Total Amount of Claims** (Approx.):<br><br>**$704,922.06** | N | Y<br><br>Creditors in this class are entitled to vote on the Plan | • **Payment Interval**: Distributions to Allowed General Unsecured Claims shall be made in monthly payments, starting on the Effective Date and continuing on the first day of each month thereafter for a period of five years for a total amount of $140,984.41.<br><br>• **Payment Amount**: Allowed General Unsecured Claims shall receive a 20% pro-rata distribution from Net Proceeds, after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.<br><br>• **Begin Date**: First business day after the Effective Date of Plan.<br><br>• **End Date**: The creditors shall be paid pro-rata for a period of 5 years.<br><br>• **Total Payout**: Pro-rata distribution of funds held by Debtor, after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.  Total payout to general unsecured creditors will be $140,984.41 |

### 4.    Class Of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stocks in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.  The following

21

chart identifies this Plan's treatment of the class of interest holders:

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 17 | **Peter N. Wambaa (100%)** | N | Interest holders will retain their equity interests in the Debtor. In lieu of his interest Mr. Wambaa will make a one-time contribution in the amount of $20,000.<br><br>Pursuant to the current approved insider compensation, Mr. Wambaa will continue to receive $20,000 monthly (gross) for his services as the owner/operator and driver in charge. |

### D. **Means of Effectuating the Plan**

#### 1. **Funding of the Plan**

The sources of funding the Plan are the operating revenue of the Debtor's facilities. Attached to the Disclosure Statement as **Exhibit "C"** are the financial forecasts for the period from the estimated Effective Date (July 2026) through and including July 2031 which reflects, among other things, the revenue earmarked for payments to creditors under the plan.

#### 2. **Post-Confirmation Management and Disbursing Agent**

The Reorganized Debtor will continue to manage its affairs post-confirmation. The post-confirmation management of the Debtor shall continue to be handled by Mr. Wambaa who is the current President of the Debtor. Reorganized Debtor shall serve as the Disbursing Agent under the Plan.

The Reorganized Debtor shall serve without bond and shall not receive any compensation for distribution services rendered and expenses incurred pursuant to the Plan.

#### 3. **Objections to Claims**

Pursuant to 11 U.S.C. §502(a), any party in interest may assert objections to claims. As provided in Section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan. The Court shall retain jurisdiction over the Debtor, the Reorganized Debtor and the Case to resolve such objections to claims following the confirmation of the Plan.

The Debtor intends to file objections to claims filed by the following claimants:

1. United States Small Business Administration on the basis that the claim is unsecured as the Debtor's assets have no equity.  To the extent there are accounts receivables, SBA's UCC lien has priority to that of other unsecured creditors. However, based on Debtor's schedules and accounting the accounts receivables are less than the amount owed to SBA.

2. CFG Merchant Solutions

3. RDM Capital Funding LLC DBA FinTap

**E.  Acceptance or Rejection of the Plan; Cramdown**

**1.    Acceptance by Impaired Classes of Claims and Interests**

Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of the holders of such Allowed Claims actually voting in such Class (other than Claims by any holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan.

Only Impaired Classes are entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**2.    Voting Classes**

Except as otherwise required by the Bankruptcy Code or the Bankruptcy Rules or as otherwise provided in this Section II.E.2, the holders of Claims in Classes 3, 10, 11, 13, 14, 15 and 16 inclusive, shall be entitled to vote to accept or reject the Plan.  Class 17 (Interests) regarding Unimpaired under the Plan and, as a result, shall not be entitled to vote to accept or reject the Plan, and shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

Administrative Claims and Priority Tax Claims are deemed to be Unimpaired and not classified under the Plan.  As a result, such Claims are not entitled to vote to accept or rejection

23

the Plan.

### 3. Ballot Instructions

Each Claimant entitled to vote on the Plan is required to complete and return a Ballot to the voting agent, which will compile the votes so received. All questions as to the validity, form, and eligibility (including time of receipt) of Ballots will be resolved by the Bankruptcy Court upon application or at the Confirmation Hearing.

### 3. Cramdown:  Section 1129(b) of the Bankruptcy Code

If all applicable requirements for confirmation of the Plan are satisfied as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code except subsection (8) thereof, the Debtor intends to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) of the Bankruptcy Code.

### F. Other Provisions of the Plan

### 1. Claims

March 6, 2026, was the deadline for filing proofs of claim or interest in the Case.  Pursuant to section 502(a) of the Bankruptcy Code, any party in interest may object to any Claim.  As provided by section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated disputed claim for purposes allowance and confirmation of the Plan.  The Court shall retain jurisdiction over the Debtor, the Reorganized Debtor and the Case to resolve such objections to Claims following the confirmation of the Plan.  The Court shall also retain jurisdiction to determine the priorities of liens based on Allowed Claims.  Nothing contained in the Plan shall constitute a waiver or release by the Debtor of any rights of setoff or recoupment, or of any defense, it may have with respect to any claim.  The Reorganized Debtor shall withhold from net proceeds to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of Claims that are disputed and have not been Allowed (the "Disputed Claims") as of the date funds become available for distribution to creditors of any particular Class as if such Claims were allowed in full.

## 2. Accrual of Interest on Claims

Except as specifically provided for in the Plan, in the Confirmation Order, or in some other order of the Court, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Nothing set forth herein shall limit or impair the accrual of interest provided for in this Plan.

To the extent the Debtor or any other party in interest objects to the allowance of any Claim, nothing in the Plan or herein shall be deemed to imply or create for the holders of any Disputed Claims any entitlement to receive interest upon the allowed amount of any such Disputed Claims as a result, *inter alia*, of the delay in payment of such Claims, except as expressly stated in the treatment pursuant to the Plan.

## 3. Distributions to be Made Pursuant to the Plan

Distributions to be made by the Reorganized Debtor on the Effective Date on account of any Claim shall be made on the Effective Date or as promptly thereafter as practicable. Distributions to be made by the Reorganized Debtor under the Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole election of the Reorganized Debtor.  Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be made to holders of Allowed Claims pursuant to the Plan may be delivered by regular first-class mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, to such address.

Checks issued by the Reorganized Debtor to pay Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Reorganized Debtor by the holder of the Allowed Claim to whom such check originally was issued, prior to the expiration of 120 days from the date of issuance of such check.  After such date, the Claim shall be deemed disallowed and the monies otherwise payable on account of such Claim shall revest in the Reorganized Debtor free and clear of all claims and interests.

In connection with the Plan and any instruments issued in connection therewith, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### 4.    **Avoidance Actions**

The Reorganized Debtor reserves the sole right under the Plan to pursue avoidance actions and other Actions of the Estate to the extent any exist.  The Debtor reserves for the Reorganized Debtor all rights to commence and pursue, as appropriate, any and all Avoidance Actions or other Actions, whether arising prior to or after the Petition Date, in any court or other tribunal, including without limitation, in an adversary proceeding filed in the Court.  While the Debtors have attempted to identify Actions or Avoidance Actions in the Disclosure Statement which may be pursued, and hereby incorporate by reference those disclosures and provisions, the failure to list any potential Action or Avoidance Action, generally or specifically, is not intended to limit the rights of the Debtor or the Reorganized Debtor to pursue any Action or Avoidance Action.  All Avoidance Actions and other Actions are preserved under the Plan for the benefit of the Estate and the Reorganized Debtor.  Any recovery will be paid to creditors pursuant to terms of this Plan.

Unless an Action or Avoidance Action against any Person is expressly waived, relinquished, released, compromised or settled as provided or identified in the Plan, any Confirmation Order or prior Court order, the Debtor and Reorganized Debtor expressly reserve Actions and Avoidance Actions for later adjudication.  Therefore, no preclusion doctrine, including, without limitation, the doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Action or Avoidance Action upon of after Confirmation or consummation of the Plan.

All professional fees incurred in pursuing the Avoidance Actions or other Actions shall be paid by the Reorganized Debtor without the necessity of a Court order.  However, the Court will reserve exclusive jurisdiction to decide any and all disputes regarding the payment of the fees and costs related to post-confirmation professional fees upon request of a party in interest and after

notice and a hearing.

### 5.     Exculpations, Releases and Injunction

To the maximum extent permitted by law, neither the Debtor, the Estate, nor any of their employees, agents, representatives, or the professionals employed or retained by any of them, whether or not by Court order (each, a "Released Person"), shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of the Plan, the Disclosure Statement, or a contract, instrument, release or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein.  Each Released Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

The occurrence of the Effective Date after the entry of the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Estate, or their property on account of any such discharged claims, debts or liabilities or terminated interests or rights:  (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

The injunction does not apply to Debtor's guarantors and does not prevent creditors of the Debtor from enforcing their judgment or liens against the Debtor's guarantors.

Nothing herein enjoins or otherwise affects the rights of creditors to pursue their rights as against any individual or entity that is not the Debtor, the Estate, or property of the Debtor or the Estate. Specifically, the injunction described above does not apply to or protect the Debtor's guarantors or co-obligors. Furthermore, the debts, obligations, and liabilities of the Debtor's guarantors and co-obligors are not discharged or released through the entry of the Confirmation Order or through the provisions of the Plan.

By accepting distribution pursuant to the Plan, each holder of an Allowed Claim or Interest receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.

### 6. Executory Contracts And Unexpired Leases

The executory contracts to be assumed as obligations of the reorganized Debtor under the Plan are the two leases entered between Debtor and lessee for the two locations Debtor operates. The Debtor intends to assume both leases and continue operations in the office space and continue to rent out space in Riverside.  Attached to the Disclosure Statement as **Exhibit "F"** is a list of unexpired leases that the Debtor intends to assume under this Plan.  Pursuant to the Van Nuys lease, the Debtor pays its landlord $3,194 per month.  The Riverside lease is currently a month-to-month lease where Debtor is the landlord and receives monthly payment from a tenant in the amount of $4,680.

### 7. Retention Of Jurisdiction

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally permissible including for the following purposes:

a.     To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

b.     To determine the validity, classification, or priority of Claims and Interests

28

upon objection by the Debtor, the Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

c. To determine the extent, validity and priority of any lien asserted against property of the Debtor or Property of the Estate;

d. To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan, the Confirmation Order, and to determine all matters that may be pending before the Court in this Case on or before the Effective Date with respect to any person or entity related thereto;

e. To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

f. To determine any request for payment of Administrative Claims;

g. To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this Case whether before, on, or after the Effective Date;

h. To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

i. To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

j. Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions, take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Confirmation Order;

k. To issue such orders in aid of consummation of the Plan or the

Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

l.      To enter a final decree closing this Case.

IV. **Risk Factors**

1.      **Introduction**

The Reorganized Debtor's ability to perform its obligations under the Plan is subject to various factors and contingencies, some of which are described in this section.  The following discussion summarizes some of the material risks associated with the Plan, but it is not intended to be exhaustive.  Moreover, it should be read in connection with the other disclosures contained in this Disclosure Statement and the Plan.  Each creditor, in conjunction with its advisors, should supplement the following discussion by analyzing and evaluating the Plan and the Disclosure Statement as a whole. **THE RISKS ASSOCIATED WITH THE PLAN MUST BE CAREFULLY CONSIDERED IN DETERMINING WHETHER TO ACCEPT THE PLAN.**

2.      **The Cash Flow Projections**

As discussed above and in the Plan, the Reorganized Debtor intends to fund the Plan through its continued cash flow.  Therefore, the main risk factor associated with the Debtor's ability to consummate the provisions of the Plan is the assumptions underlying the cash flow projections that may not be realized.

3.      **Certain Bankruptcy Law Considerations**

a.   **Risk of Non-Confirmation of the Plan**

Although the Debtor believes that the Plan satisfies the requirements necessary for confirmation by the Court, there can be no assurance that the Court will reach the same conclusion.  Moreover, there can be no assurance that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes to accept the Plan (as modified).

b.   **Tax Consequences**

30

This section only will address certain federal income tax consequences.  This section will not address the federal income tax consequences to creditors or interest holders or foreign, state or local income tax consequences, estate or gift tax consequences of the Plan.

The Internal Revenue Code provides that a debtor in a chapter 11 bankruptcy case must reduce certain of its tax attributes by the amount of any cancellation of indebtedness ("COD") income that is realized as a result of the bankruptcy plan, instead of recognizing the income.  COD income is the excess of the amount of a taxpayer's indebtedness that is discharged over the amount or value of the consideration exchanged therefor.  As a result of the discharge and satisfaction of Claims pursuant to the Plan, the Debtor will realize some COD income, and, accordingly, the Debtor will reduce certain tax attributes by the amount of unrecognized COD income.

Tax attributes that are subject to reduction include net operating losses, capital losses, loss carryovers, certain tax credits and, subject to certain limitations, and the tax basis of property.  The reduction of tax attributes occurs after the determination of the Debtor's tax for the taxable year in which the COD income is realized.  Payments of interest, dividends, and certain other payments are generally subject to withholding unless the payee of such payment furnishes such payee's correct taxpayer identification number (social security number or employer identification number) to the payor.

The Debtor may be required to withhold the applicable percentage of any payments made to a holder who does not provide its taxpayer identification number.  Backup withholding is not an additional tax, but an advance payment that may be refunded to the extent it results in an overpayment of tax.

**V.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

**PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.**  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

which they may wish to consider, as well as certain deadlines for filing claims.  The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm the Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and whether the Plan is feasible.  These requirements are not the only requirements for confirmation.

**A. <u>Who May Vote or Object</u>**

**1. <u>Who May Object to Confirmation of the Plan</u>**

Any party in interest may object to the confirmation of the Plan, but, as explained below, not everyone is entitled to vote to accept or reject the Plan.

**2. <u>Who May Vote to Accept or Reject the Plan</u>**

A Claimant or Interest Holder has a right to vote for or against the Plan if that Claimant or Interest Holder has a Claim which is both (a) Allowed or Allowed for voting purposes, and (b) classified in an Impaired Class.

**3. <u>What is an Allowed Claim/Interest</u>**

As noted above, a Claimant or Interest Holder must first have an Allowed Claim or Interest to have the right to vote on the Plan.  Generally, any Proof of Claim or Interest will be Allowed Claim or Interest, unless a party in interest brings a motion objecting to the claim.  When an objection to a Claim or Interest is filed, the Claimant or Interest Holder holding the Claim or Interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the Claim or Interest for voting purposes.

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS MARCH 6, 2026.**  The Debtor provided notice of such Bar Date in accordance with the Court's order, Bankruptcy Code, Bankruptcy Rules and Local Rules of the Court.  A Claimant or Interest Holder may have an Allowed Claim or Interest even if a Proof of Claim or Interest was not timely filed.  A Claim is deemed allowed if (i) it is scheduled on the Debtor's schedules and such Claim is

not scheduled as disputed, contingent or unliquidated, and (ii) no party in interest has objected to the Claim.  An Interest is deemed allowed if it is scheduled and no party in interest has objected to the Interest.

### 4. <u>What is an Impaired Claim/Interest</u>

As noted above, an Allowed Claim or Interest only has the right to vote if it is in a Class that is Impaired under the Plan.  A Class is Impaired if the Plan alters the legal, equitable, of contractual rights of the members of that Class.  For example, a Class comprised of general unsecured claims is Impaired if the Plan fails to pay the members of that class 100% of what they are owed on the Effective Date.

In this Case, the Debtor believes that holders of claims in Classes 3, 10, 11, 12, 13, 14 and 15 are Impaired and entitled to vote to accept or reject the Plan.  Parties who dispute the Debtor's characterization of their Claim or Interest as being Impaired or Unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized the Class.

### 5. <u>Who is Not Entitled to Vote</u>

The following four types of claims are not entitled to vote:  (i) Claims that have been disallowed; (ii) Claims in Unimpaired Classes; (iii) Claims entitled to priority pursuant to Bankruptcy Code sections 507(a)(1), (a)(2) and (a)(8); and (iv) Claims in Classes that do not receive or retain any value under the Plan.  Claims in Unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy Code sections 507(a)(1), (a)(2) and (a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in Classes that do not receive or retain any value under the Plan do not vote because such Classes are deemed to have rejected the Plan.  **EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.**

### 6. <u>Who Can Vote in More Than One Class</u>

A Claimant whose Claim has been allowed in part as a Secured Claim and in part as an

Unsecured Claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the Claim and another ballot for the unsecured portion of the Claim.

### 7. Votes Necessary to Confirm The Plan

If Impaired Classes exist, the Court cannot confirm the Plan unless (a) at least one Impaired Class has accepted the Plan without counting the votes of any insiders within that Class, and (b) all Impaired Classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed herein.

### 8. Votes Necessary for a Class to Accept The Plan

A Class of Claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims which actually voted, voted in favor of the Plan.  A Class of Interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the Interest Holders of such Class which actually voted, voted to accept the Plan.

### 9. Treatment of Non-accepting Classes

As noted above, even if all Impaired Classes do not accept the Plan, the Court nonetheless may confirm the Plan if the non-accepting Classes are treated in the manner required by the Bankruptcy Code.  The process by which non-accepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on no accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 10. Request For Confirmation Despite no Acceptance by Impaired Classes

The Debtor requests a cramdown on any Impaired Classes who do not vote to accept the Plan.

#### a. Liquidation Analysis

Another confirmation requirement is the "Best Interest Test," which requires a liquidation

analysis. Under the Best Interest Test, if a Claimant or Interest Holder is in an Impaired Class and that Claimant or Interest Holder does not vote to accept the Plan, then that Claimant or Interest Holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.

In a chapter 7 case, the Debtor's assets are usually sold by a chapter 7 trustee. Secured creditors are paid first from the sale proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all Claimants who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation. The Debtor maintains that this requirement is met here for the following reasons.

The impaired classes of creditors under the Plan for the Debtor's classes 3, 10, 11, 12, 13, 14 and 15 will not receive more money through a chapter 7 liquidation than under the Plan, therefore, the Best Interest Test has been satisfied with respect to class Classes 3, 10, 11, 12, 13, 14 and 15 claim holders who does not accept the Plan.

In the event of chapter 7, a Chapter 7 Trustee would not be authorized to operate the Debtor's facilities. The Debtor transports vehicles nationally and is a labor-intensive working seven days a week to assure timely delivery of the vehicles.

In addition, in the event of a Chapter 7, the only assets that the trustee could possibly sell is the Arlington Property which according to secured creditor Harvest Business Bank there is no equity in the property. As such other items such as accounts receivables or office furniture which are not likely to result in any significant recovery for the Debtor. After accounting for the fees of

35

the chapter 7 Trustee and professionals hired by the trustee, it is very likely that there would be no proceeds available for the payment to any creditors.

Under the Best Interests Test, all that is required is for Creditors to receive as much as they would under chapter 7 of the Bankruptcy Code.  Here, the Debtor believes the Best Interests Test has been met in that, under the Plan, Creditors will receive at least as much as they would receive under a chapter 7 liquidation.  Moreover, as set forth in the liquidation analysis below, under a chapter 7 Liquidation, the funds available for Creditors would be less than under the Plan.

Below is a demonstration, in balance sheet format, that all creditors will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.

**ASSETS VALUE AT LIQUIDATION VALUES**

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE[4] |
|---|---|
| CURRENT ASSETS | |
| a.  Cash on Hand | $17,804.18 (as of March 25, 2026)[5] |
| b. Accounts Receivable | $338,000 |
| c. Arlington Property | $2,600,000 |
| d. Trucks Free and Clear are two 2014 Peterbilt and trailers and one 2019 Peterbilt with trailer (Vin Numbers ending in 22464, ending 27473, and ending in 264594) | $200,000 |
| TOTAL FIXED ASSETS | $3,155,000 |
| TOTAL OTHER ASSETS | $0.00 |
| | |

[4] These amounts are estimates and based on a liquidation value compared to what was originally placed in the Debtor's schedules.

[5] This amount includes all accounts and payroll that needs to be paid for wages and salaries earned by employees.

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE[4] |
|---|---|
| **TOTAL ASSETS AT LIQUIDATION VALUE** | **$3,155,000** |
| **Less:** Secured creditor's recovery | $3,162,547.99[6] |
| **Less:** Chapter 7 trustee fees and expenses | $40,000 est. |
| **Less:** Priority claims, excluding administrative expense claims | $60,000 |
| **Less:** Tax Claims entitled to priority | $20,000 |
| **Less:** Debtor's claimed exemptions | $0.00 |
| (1) Balance for unsecured claims | $0.00 |
| (2) Total amount of unsecured claims | **$704,922.06[7]** |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION = 0%** | **0%** |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN UNDER THIS PLAN = 100%.** | **20%** |

B. **Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan (unless such liquidation or reorganization is proposed in the Plan).

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date to pay all the claims and expenses which are entitled to be paid on such date. The second aspect considers whether the Reorganized Debtor will have enough cash over the life of the Plan to make the required Plan

---

[6] This amount does not include the SBA and other claimants that filed a secured claim. This amount only includes Harvest Business Bank, Continental Bank, Huntington Bank, Bell Bank,

[7] This amount includes all disputed claims.

37

payments.

Debtor will have on hand by Effective Date (estimated) $100,000

**To Pay** Administrative claims (not covered by retainers)    $4,000

**To Pay** Statutory costs & charges    (estimated)    $0.00

**To Pay** Other Plan Payments due on Effective Date    $86,828.09

Balance after paying these amounts    $743.91

The sources of the cash Debtor will have on hand by the Effective Date, as shown above, are:

| | |
|---|---|
| **$17,804.18** | Cash in DIP Accounts now (as of March 25, 2026) |
| **$350,000** | **Income** |
| **$258,428** | **Less Operating Expenses** |
| **$109,376.1** | **Total** |

Based on the current terms of the Plan, these requirements are satisfied.  Under the Plan, the Debtor proposes to pay all Allowed Claims based on the proposed plan and priority to be determined by the Bankruptcy Court. The Effective Date is the first business day following seven days after the Confirmation Order becomes a Final Order.  Assuming the Reorganized Debtor is successful in continued operations of the Debtor, the Plan clearly meets the feasibility test.

**VI.**

**EFFECT OF CONFIRMATION**

A.  **Discharge**

The rights under the Plan and the treatment of Claims under the Plan will be in exchange for, and in complete satisfaction, discharge, and release of, all Claims of any nature whatsoever (including, without limitation, any interest accrued on Claims from and after the Petition Date) against the Debtor, the Reorganized Debtor.  Except as otherwise provided in the Plan or the Confirmation Order:

1. On the later of the Effective Date or on completion of all payments under the Plan 11 U.S.C. § 1141(d)(5), the Debtor, the Estate, the Reorganized Debtor, and their property will, to the fullest extent permitted by Bankruptcy Code § 1141, be deemed discharged and released from any and all Claims, including, without limitation, all demands, liabilities, and Claims, that arose before the Confirmation Date or that are based upon or otherwise relate to acts, events, omissions, transactions or other activities of any kind that occurred before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h), or 502(I) regardless of whether: (1) a Proof of Claim based on such a debt is filed or deemed filed; (2) a Claim based on such a debt is allowable under Bankruptcy Code § 502; or (3) the Person holding the Claim based on such a debt has accepted the Plan;

2. All Persons will be precluded from asserting against the Debtor, the Estate, the Reorganized Debtor, or their property any other or further Claims based on, arising from, or in connection with any act, event, omission, transaction, or other activity of any kind that occurred before the Confirmation Date;

3. Any debt of the Debtor, whether secured or unsecured, which was in default as of or any time prior to the Confirmation Date, will no longer be deemed in default. Moreover, to the extent that the Debtor complies with the terms and conditions of the Plan, these obligations will be deemed in good standing;

4. As set forth in Bankruptcy Code §§ 524 and 1141, except as otherwise provided in the Plan or the Confirmation Order and subject to further court order as provided in 11 U.S.C. § 1141(d)(5), the court's order under the above section, constitutes a discharge of any and all Claims against, and all debts and liabilities of, the Debtor. The Reorganized Debtor, to the fullest extent permitted by Bankruptcy Code § 1141, be deemed discharged and released from any and all Claims, including, without limitation, all demands, liabilities and Claims that arose before the

Confirmation Date or that are based on or otherwise relate to acts, events, omissions, transactions or other activities of any kind that occurred before the Confirmation Date.  This discharge will void any judgment that was obtained against the Debtor at any time only to the extent that the judgment relates to a discharged Claim; and

5.    Subject to the limitations and conditions imposed under Bankruptcy Code § 1125(e), Persons who–in good faith and in compliance with applicable Bankruptcy Code provisions–either solicit Plan acceptances or rejections or participate in the offer, issuance, sale, or purchase of securities under the Plan will not be liable on account of their solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of Plan acceptances or rejections or the offer, issuance, sale or purchase of such securities.

Nothing contained herein shall limit the effect of Confirmation as described in sections 524 and/or 1141 of the Bankruptcy Code.

**B.  Revesting of Property in the Reorganized Debtor**

Except as otherwise provided herein or in the Confirmation Order, the Confirmation of the Plan shall not revest any of the property of the Estate in the Reorganized Debtor.  Such revesting of any property shall be subject to further court order.  In addition, all of the Claims against and/or Interests in third parties that constitute property of the Estate shall remain property of the estate subject to further court order.  Following the Effective Date, the Reorganized Debtor shall have absolute authority to prosecute, waive, adjust or settle any Claims without the need for approval by the Court.  Following the Effective Date, the Reorganized Debtor shall have the authority to employ such professionals as she deems necessary to prosecute or defend such Claims asserted without the need for Court approval.

**C.  Default**

Except as otherwise provided herein or in the Confirmation Order, in the event that the Reorganized Debtor defaults in the performance of any of Debtor's obligations under the Plan and

40

shall not have cured such a default within thirty (30) days after receipt of written notice of default from the Person to whom the performance is due, then the Person to whom the performance is due may pursue such remedies as are available at law or in equity.  An event of default occurring with respect to one Claim shall not be deemed an event of default with respect to any other Claim.

### a.  Modification Of Plan

The Plan may be modified at any time after confirmation but before the completion of payments under the Plan, whether or not the Plan has been substantially consummated, upon request of the Debtor, the United States Trustee, or the holder of an allowed unsecured claim, to —

(1) increase or reduce the amount of payments on Claims of a particular Class provided for by the Plan;

(2) extend or reduce the time period for such payments; or

(3) alter the amount of the distribution to a creditor whose Claim is provided for by the Plan to the extent necessary to take account of any payment of such Claim made other than under the Plan.

### b.  Post-Confirmation Status Report

Within 120 days following the entry of the Confirmation Order, the Reorganized Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the 20 largest unsecured creditors, and those parties who have requested special notice before or after the Effective Date.  Further status reports shall be filed every 120 days and served on the same entities until the entry of a final decree closing the Case or dismissal or conversion of the Case.

### c.  Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the Case under section 1112(b) after the Plan is confirmed if there is a default in performing the Plan.  If the Court orders the Case converted to chapter 7 after the Plan is confirmed, then all property that had been

41

property of the Estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate. The automatic stay will be re-imposed upon the revested property, but only to the extent that the Court did not previously authorize relief from stay during the Case, including, but not limited to, post-confirmation.  The Confirmation Order may also be revoked under very limited circumstances.

The Court may revoke the Confirmation Order if the Confirmation Order was procured by fraud and if the party in interest brings an adversary proceeding to revoke the Confirmation Order within 180 days after the entry of the Confirmation Order.

### d. **Post-Confirmation United States Trustee Fees**

The Reorganized Debtor shall be responsible for the timely payment of all fees incurred after the Effective Date pursuant to 28 U.S.C. § 1930(a)(6).

### e. **Final Decree**

Once this Estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor (or other party as the Court shall designate in the Confirmation Order) shall file a motion with the Court to obtain a final decree to close the Case.

DATED: March 25, 2026         By:_____

Westside Tow & Transport Inc.
Debtor and Debtor in Possession

PRESENTED BY:

**TERZIAN LAW GROUP, APC**

By:  /s/Tamar Terzian
     Tamar Terzian
     Westside Tow & Transport Inc.,
     Debtor and Debtor in Possession

42

EXHIBIT "A"

# Profit and Loss

## WESTSIDE TOW AND TRANSPORT

October 8, 2025-February 28, 2026

1/1

| | OCT 8 - OCT 31 2025 | NOVEMBER 2025 | DECEMBER 2025 | JANUARY 2026 | FEBRUARY 2026 | TOTAL |
|---|---|---|---|---|---|---|
| Income | 297,320.01 | 445,757.10 | 488,265.50 | 427,477.24 | 607,684.76 | $2,266,504.61 |
| Cost of Goods Sold | | 525.00 | | | | $525.00 |
| **Gross Profit** | 297,320.01 | 445,232.10 | 488,265.50 | 427,477.24 | 607,684.76 | $2,265,979.61 |
| Expenses | 224,205.19 | 254,092.81 | 347,511.57 | 357,650.65 | 413,319.04 | $1,596,779.26 |
| **Net Operating Income** | 73,114.82 | 191,139.29 | 140,753.93 | 69,826.59 | 194,365.72 | $669,200.35 |
| Other Expenses | 1.00 | | | | | $1.00 |
| **Net Other Income** | -1.00 | | | | | -$1.00 |
| **Net Income** | 73,113.82 | 191,139.29 | 140,753.93 | 69,826.59 | 194,365.72 | $669,199.35 |

# Exhibit "B"

**Fill in this information to identify the case:**

Debtor name    **Westside Tow & Transport, Inc.**

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)   **9:25-bk-11352**

☒ Check if this is an amended filing

## Official Form 206A/B

## Schedule A/B: Assets - Real and Personal Property    12/15

**Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.**

**For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.**

| Part 1: | Cash and cash equivalents |
|---|---|

1. **Does the debtor have any cash or cash equivalents?**

☐ No.   Go to Part 2.
☒ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

3.   **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **Bank of America** | **Checking** | **5760** | $0.00 |
| 3.2. | **Chase Bank** | **Checking** | **5918** | $26,353.83 |
| 3.3. | **Chase Savings Account** | **Savings** | **5791** | $2.00 |
| 3.4. | **Bank of America Account** | **Checking** | **5951** | $1.67 |
| 3.5. | **Bank of America** | **Checking** | **5605** | $7.77 |
| 3.6. | **Bank of America** | **Checking** | **0506** | $2.00 |
| 3.7. | **Chase Bank** | **Savings** | **3836** | $77.01 |

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| Debtor | **Westside Tow & Transport, Inc.** | Case number *(If known)* **9:25-bk-11352** |
|---|---|---|
| | Name | |

4.      **Other cash equivalents** *(Identify all)*

5.      **Total of Part 1.**                                                       **$26,444.28**

             Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

**Part 2:**      **Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

    ☒ No.    Go to Part 3.
    ☐ Yes Fill in the information below.

**Part 3:**      **Accounts receivable**

10. **Does the debtor have any accounts receivable?**

    ☐ No.    Go to Part 4.
    ☒ Yes Fill in the information below.

11.      **Accounts receivable**

         11b. Over 90 days old:        **669,243.00**    -    **283,344.00** =....        **$385,899.00**
                                     face amount                    doubtful or uncollectible accounts

12.      **Total of Part 3.**                                                       **$385,899.00**

             Current value on lines 11a + 11b = line 12.    Copy the total to line 82.

**Part 4:**      **Investments**

13. **Does the debtor own any investments?**

    ☒ No.    Go to Part 5.
    ☐ Yes Fill in the information below.

**Part 5:**      **Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

    ☒ No.    Go to Part 6.
    ☐ Yes Fill in the information below.

**Part 6:**      **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

    ☒ No.    Go to Part 7.
    ☐ Yes Fill in the information below.

**Part 7:**      **Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

    ☐ No.    Go to Part 8.
    ☒ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** **Miscellaneous office furniture- four desks, chairs, five computers (including one laptop)** | $1,500.00 | | $1,500.00 |

| Official Form 206A/B | Schedule A/B Assets - Real and Personal Property | page 2 |
|---|---|---|

| Debtor | **Westside Tow & Transport, Inc.** | Case number *(If known)* **9:25-bk-11352** |
|---|---|---|
| | Name | |

40. **Office fixtures**

41. **Office equipment, including all computer equipment and communication systems equipment and software**

42. **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

43. **Total of Part 7.**
Add lines 39 through 42.   Copy the total to line 86.

|  |
|---|
| **$1,500.00** |

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
☒ No
☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
☒ No
☐ Yes

**Part 8:**    **Machinery, equipment, and vehicles**

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No.   Go to Part 9.
☒ Yes Fill in the information below.

| General description Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1.  **2022 Dodge Ram with 34,000 miles** | $0.00 | **Comparable sale** | $28,000.00 |
| 47.2.  **2023 BMW X5 25,000 miles** | $60,954.82 | **Comparable sale** | $50,000.00 |
| 47.3.  **2023 BMW X5 25,000 miles** | $0.00 | **Comparable sale** | $50,000.00 |
| 47.4.  **2023 BMW X7 18,000 miles** | $0.00 | **Comparable sale** | $63,000.00 |
| 47.5.  **2019 Peterbilt 1NPXL49X0KD265468 400,000 miles and   2019 Cottrell 5E0AA1446KG169101** | $0.00 | **Comparable sale** | $196,000.00 |
| 47.6.  **2020 Peterbilt 500,000 miles 1NPXL49X0LD716464 and 2020 Cottrell 5E0AA1641LG11601** | $0.00 | **Comparable sale** | $216,000.00 |
| 47.7.  **2020 Peterbilt 400,000 miles 1NPXLP9X1LD653506 and 5E0AA164XLG303901** | $0.00 | **Comparable sale** | $230,550.00 |
| 47.8.  **2019 Peterbilt 1NPXL49X7KD611838 420,000 miles and 2020 Cottrell 5E0AA1646LG416101** | $0.00 | **Comparable sale** | $215,000.00 |

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

| Debtor | **Westside Tow & Transport, Inc.** | Case number *(If known)* **9:25-bk-11352** |
|---|---|---|
| | Name | |

| | | | | |
|---|---|---|---|---|
| 47.9. | **2014 Peterbilt 007/007T, 1NPWD49X4ED227464 and 2020 Cottrell 5E0AA1640LG359801** | $0.00 | Comparable sale | $150,000.00 |
| 47.10. | **2014 Peterbilt 008/008T VIN 1NPWD49X5ED227473 and 2014 Cottrell Trailer- only trailer- 5E0AA144XEG484505** | $0.00 | Comparable sale | $125,000.00 |
| 47.11. | **2019 Peterbilt 009/009T 1NPXLP9X9KD264594 and 2020 Cottrell 5E0AA1646KG152201** | $0.00 | Comparable sale | $195,500.00 |
| 47.12. | **2023 Freightliner Truck 110,000 miles, 1FVACWFC8PHUH0935** | $0.00 | | $151,200.00 |
| 47.13. | **2023 Freightliner M2106 Truck Serial Number 1FVACWFC4PHUH0933** | $0.00 | Comparable sale | $150,200.00 |
| 47.14. | **2020 Peterbilt 1NPXL49X4LD654227 and 2020 Cottrell 5E0AA1647LG304701** | $0.00 | Comparable sale | $255,000.00 |
| 47.15. | **2022 Peterbilt 1NPXL49X9ND790145 and 2020 Cottrell 5E0AA164XLG303901** | $0.00 | Comparable sale | $291,000.00 |

48.     **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

49.     **Aircraft and accessories**

50.     **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

51.     **Total of Part 8.**

        Add lines 47 through 50.   Copy the total to line 87.                                   | **$2,366,450.00** |

52.     **Is a depreciation schedule available for any of the property listed in Part 8?**
        ☒ No
        ☐ Yes

53.     **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
        ☒ No
        ☐ Yes

**Part 9:        Real property**

54. **Does the debtor own or lease any real property?**

☐ No.   Go to Part 10.
☒ Yes Fill in the information below.

55.     **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                              Best Case Bankruptcy

Debtor    **Westside Tow & Transport, Inc.**                              Case number *(If known)*  **9:25-bk-11352**
        Name

| Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | | | | |
|---|---|---|---|---|
| 55.1. **9500 Arlington Avenue, Riverside, CA 92503** | Fee Simple | $0.00 | | $2,800,000.00 |

56.    **Total of Part 9.**

    Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
    Copy the total to line 88.

> $2,800,000.00

57.    **Is a depreciation schedule available for any of the property listed in Part 9?**
    ☒ No
    ☐ Yes

58.    **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
    ☒ No
    ☐ Yes

**Part 10:**    **Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

☒ No.   Go to Part 11.
☐ Yes Fill in the information below.

**Part 11:**    **All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**
    Include all interests in executory contracts and unexpired leases not previously reported on this form.

☒ No.   Go to Part 12.
☐ Yes Fill in the information below.

Debtor    **Westside Tow & Transport, Inc.**                          Case number *(If known)*  **9:25-bk-11352**
             Name

---

Part 12:    **Summary**

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $26,444.28 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $385,899.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.**   *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $1,500.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $2,366,450.00 | |
| 88. **Real property.** *Copy line 56, Part 9.............................................................>* | | $2,800,000.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $2,780,293.28 | + 91b. $2,800,000.00 |
| 92. **Total of all property on Schedule A/B**. Add lines 91a+91b=92 | | $5,580,293.28 |

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com                                                                    Best Case Bankruptcy

EXHIBIT "C"

## Westside Tow & Transport – 2026 Annual Budget Projections
July 2026 – June 2027

| | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | ANNUAL TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| Income (projected monthly revenue) | 350,000 | 350,011 | 355,021 | 358,572 | 362,157 | 365,779 | 369,437 | 371,284 | 373,140 | 375,006 | 376,881 | 367,765 | 4,375,052 |
| **Total Income** | **350,000** | **350,011** | **355,021** | **358,572** | **362,157** | **365,779** | **369,437** | **371,284** | **373,140** | **375,006** | **376,881** | **367,765** | **4,375,052** |
| **COST OF TRANSPORT** | | | | | | | | | | | | | |
| 3PL Carriers / Subcontracted Loads | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 300,000 |
| Driver / Office Admin Salaries – Excludes Insiders | 71,000 | 71,000 | 71,000 | 71,000 | 71,000 | 71,000 | 71,000 | 71,000 | 71,000 | 71,000 | 71,000 | 71,000 | 852,000 |
| Payroll Taxes (10%) | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 85,200 |
| Fuel (diesel/gas, DEF, and fuel card fees) | 80,000 | 80,000 | 81,750 | 84,000 | 87,750 | 87,500 | 95,000 | 95,500 | 98,000 | 98,000 | 98,000 | 92,000 | 1,077,500 |
| Truck Maintenance & Repairs | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,500 | 20,750 | 25,500 | 20,000 | 246,750 |
| Truck Insurance (Auto, Cargo, Liability) | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 282,000 |
| Claims & Damages | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Truck Washes / Detailing | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| Tolls & Scales | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 |
| Permits / Registration | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| Dispatch Software / Load Boards | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 7,800 |
| GPS Subscription (CalAmp) | 278 | 278 | 278 | 278 | 278 | 278 | 278 | 278 | 278 | 278 | 278 | 278 | 3,336 |
| **Total Cost of Transport** | **231,728** | **231,728** | **233,478** | **235,728** | **239,478** | **239,228** | **246,728** | **247,228** | **250,228** | **250,478** | **255,228** | **243,728** | **2,904,986** |
| **OFFICE & OVERHEAD** | | | | | | | | | | | | | |
| Office Rent | 3,300 | 3,306 | 3,313 | 3,319 | 3,325 | 3,331 | 3,338 | 3,344 | 3,350 | 3,357 | 3,363 | 3,370 | 40,016 |
| Utilities | 800 | 802 | 803 | 805 | 806 | 808 | 809 | 811 | 812 | 814 | 815 | 817 | 9,701 |
| Office Supplies / Technology | 1,200 | 1,202 | 1,205 | 1,207 | 1,209 | 1,211 | 1,214 | 1,216 | 1,218 | 1,221 | 1,223 | 1,225 | 14,551 |
| Marketing / Sales / Website / Client Outreach | 200 | 200 | 201 | 201 | 202 | 202 | 202 | 203 | 203 | 203 | 204 | 204 | 2,425 |
| Hotel / Food (for long hauls) | 500 | 501 | 502 | 503 | 504 | 505 | 506 | 507 | 508 | 509 | 510 | 511 | 6,063 |
| Insider Payments / Salary | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 240,000 |
| Misc. Equipment | 200 | 200 | 201 | 201 | 202 | 202 | 202 | 203 | 203 | 203 | 204 | 204 | 2,425 |
| **Total Office & Overhead** | **26,200** | **26,212** | **26,224** | **26,235** | **26,247** | **26,259** | **26,271** | **26,283** | **26,295** | **26,307** | **26,319** | **26,331** | **315,182** |
| **REORGANIZATION PAYMENTS** | | | | | | | | | | | | | |
| Legal Fees, Accounting and UST Fees | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 48,000 |
| Priority Internal Revenue Service | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 15,625 |
| Franchise Tax Board | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 3,284 |
| Riverside County Tax Collector | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 18,720 |
| EDD | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 1,773 |
| Harvest Bank Loan Against Arlington | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 285,012 |
| Harvest Bank Arrears | - | - | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 31,318 |
| Peterbilt – Huntington Bank 528 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 65,143 |
| Peterbilt – Huntington Bank 529 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 70,874 |
| Peterbilt – Huntington Bank 526 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 66,629 |
| Peterbilt – Continental Bank- Claim No. 10 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 68,628 |
| Peterbilt – Paccar Financial (1) | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 78,384 |
| Peterbilt – Paccar Financial (2) | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 66,048 |
| Dodge Ram | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 15,072 |
| Freightliner Truck (1) | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 38,940 |
| Freightliner Truck (2) | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 39,898 |
| JB Bostick | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 24,048 |
| Unsecured Total Claims | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 75,297 |
| Small Business Administration | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 118,080 |
| **Total Reorganization Payments** | **91,621** | **91,621** | **94,753** | **94,753** | **94,753** | **94,753** | **94,753** | **94,753** | **94,753** | **94,753** | **94,753** | **94,753** | **1,130,774** |
| **TOTAL EXPENSES** | **349,549** | **349,561** | **354,455** | **356,717** | **360,478** | **360,240** | **367,752** | **368,264** | **371,276** | **371,538** | **376,300** | **364,812** | **4,350,942** |
| **TOTAL NET INCOME** | **451** | **449** | **567** | **1,855** | **1,679** | **5,539** | **1,684** | **3,020** | **1,864** | **3,468** | **581** | **2,953** | **24,110** |

## Westside Tow & Transport – 2027 Annual Budget Projections
July 2027 – June 2028

| | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | ANNUAL TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| Income (projected monthly revenue) | 351,126 | 354,677 | 358,264 | 360,075 | 362,624 | 366,290 | 370,993 | 373,733 | 375,510 | 379,944 | 382,869 | 373,803 | 4,409,908 |
| **Total Income** | 351,126 | 354,677 | 358,264 | 360,075 | 362,624 | 366,290 | 370,993 | 373,733 | 375,510 | 379,944 | 382,869 | 373,803 | 4,409,908 |
| **COST OF TRANSPORT** | | | | | | | | | | | | | |
| 3PL Carriers / Subcontracted Loads | 25,454 | 25,492 | 25,530 | 25,568 | 25,607 | 25,645 | 25,684 | 25,722 | 25,761 | 25,799 | 25,838 | 25,877 | 307,977 |
| Driver / Office Admin Salaries – Excludes Insiders | 72,289 | 72,397 | 72,506 | 72,614 | 72,723 | 72,832 | 72,942 | 73,051 | 73,161 | 73,270 | 73,380 | 73,490 | 874,656 |
| Payroll Taxes (10%) | 7,229 | 7,240 | 7,251 | 7,261 | 7,272 | 7,283 | 7,294 | 7,305 | 7,316 | 7,327 | 7,338 | 7,349 | 87,466 |
| Fuel (diesel/gas, DEF, and fuel card fees) | 81,500 | 83,500 | 83,484 | 85,910 | 89,880 | 89,758 | 97,598 | 98,259 | 100,982 | 101,134 | 101,285 | 95,227 | 1,108,517 |
| Truck Maintenance & Repairs | 20,363 | 20,394 | 20,424 | 20,455 | 20,485 | 20,516 | 20,547 | 20,578 | 21,124 | 21,414 | 26,355 | 20,702 | 253,355 |
| Truck Insurance (Auto, Cargo, Liability) | 23,927 | 23,962 | 23,998 | 24,034 | 24,070 | 24,107 | 24,143 | 24,179 | 24,215 | 24,251 | 24,288 | 24,324 | 289,499 |
| Claims & Damages | 1,018 | 1,020 | 1,021 | 1,023 | 1,024 | 1,026 | 1,027 | 1,029 | 1,030 | 1,032 | 1,034 | 1,035 | 12,319 |
| Truck Washes / Detailing | 2,545 | 2,549 | 2,553 | 2,557 | 2,561 | 2,565 | 2,568 | 2,572 | 2,576 | 2,580 | 2,584 | 2,588 | 30,798 |
| Tolls & Scales | 204 | 204 | 204 | 205 | 205 | 205 | 205 | 206 | 206 | 206 | 207 | 207 | 2,464 |
| Permits / Registration | 509 | 510 | 511 | 511 | 512 | 513 | 514 | 514 | 515 | 516 | 517 | 518 | 6,160 |
| Dispatch Software / Load Boards | 662 | 663 | 664 | 665 | 666 | 667 | 668 | 669 | 670 | 671 | 672 | 673 | 8,007 |
| GPS Subscription (CalAmp) | 283 | 283 | 284 | 284 | 285 | 285 | 286 | 286 | 286 | 287 | 287 | 288 | 3,425 |
| **Total Cost of Transport** | 235,982 | 238,213 | 238,429 | 241,088 | 245,291 | 245,402 | 253,475 | 254,370 | 257,843 | 258,488 | 263,785 | 252,277 | 2,984,642 |
| **OFFICE & OVERHEAD** | | | | | | | | | | | | | |
| Office Rent | 3,376 | 3,382 | 3,389 | 3,395 | 3,402 | 3,408 | 3,415 | 3,421 | 3,428 | 3,434 | 3,441 | 3,447 | 40,938 |
| Utilities | 818 | 820 | 822 | 823 | 825 | 826 | 828 | 829 | 831 | 833 | 834 | 836 | 9,924 |
| Office Supplies / Technology | 1,228 | 1,230 | 1,232 | 1,235 | 1,237 | 1,239 | 1,242 | 1,244 | 1,246 | 1,249 | 1,251 | 1,254 | 14,887 |
| Marketing / Sales / Website / Client Outreach | 205 | 205 | 205 | 206 | 206 | 207 | 207 | 207 | 208 | 208 | 209 | 209 | 2,481 |
| Hotel / Food (for long hauls) | 512 | 512 | 513 | 514 | 515 | 516 | 517 | 518 | 519 | 520 | 521 | 522 | 6,203 |
| Insider Payments / Salary | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 240,000 |
| Misc. Equipment | 205 | 205 | 205 | 206 | 206 | 207 | 207 | 207 | 208 | 208 | 209 | 209 | 2,481 |
| **Total Office & Overhead** | 26,343 | 26,355 | 26,367 | 26,379 | 26,391 | 26,403 | 26,416 | 26,428 | 26,440 | 26,452 | 26,464 | 26,477 | 316,915 |
| **REORGANIZATION PAYMENTS** | | | | | | | | | | | | | |
| Legal Fees, Accounting and UST Fees | | | | | | | | | | | | | - |
| Priority Internal Revenue Service | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 15,625 |
| Franchise Tax Board | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 3,284 |
| Riverside County Tax Collector | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 18,720 |
| EDD | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 1,773 |
| Harvest Bank Loan Against Arlington | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 285,012 |
| Harvest Bank Arrears | - | - | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 31,318 |
| Peterbilt – Huntington Bank 528 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 65,143 |
| Peterbilt – Huntington Bank 529 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 70,874 |
| Peterbilt – Huntington Bank 526 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 66,629 |
| Peterbilt – Continental Bank- Claim No. 10 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 68,628 |
| Peterbilt – Paccar Financial (1) | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 78,384 |
| Peterbilt – Paccar Financial (2) | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 66,048 |
| Dodge Ram | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 15,072 |
| Freightliner Truck (1) | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 38,940 |
| Freightliner Truck (2) | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 39,898 |
| JB Bostick | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 24,048 |
| Unsecured Total Claims | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 75,297 |
| Small Business Administration | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 118,080 |
| **Total Reorganization Payments** | 87,621 | 87,621 | 90,753 | 90,753 | 90,753 | 90,753 | 90,753 | 90,753 | 90,753 | 90,753 | 90,753 | 90,753 | 1,082,774 |
| **TOTAL EXPENSES** | 349,946 | 352,190 | 355,549 | 358,220 | 362,435 | 362,559 | 370,644 | 371,551 | 375,036 | 375,693 | 381,002 | 369,507 | 4,384,330 |
| **TOTAL NET INCOME** | 1,180 | 2,488 | 2,715 | 1,855 | 189 | 3,732 | 349 | 2,182 | 474 | 4,251 | 1,867 | 4,296 | 25,578 |

## Westside Tow & Transport – 2028 Annual Budget Projections
July 2028 – June 2029

| | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | ANNUAL TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| Income (projected monthly revenue) | 356,126 | 359,187 | 362,274 | 365,387 | 368,527 | 371,694 | 374,887 | 378,108 | 381,356 | 382,631 | 387,935 | 375,854 | 4,463,966 |
| **Total Income** | 356,126 | 359,187 | 362,274 | 365,387 | 368,527 | 371,694 | 374,887 | 378,108 | 381,356 | 382,631 | 387,935 | 375,854 | 4,463,966 |
| **COST OF TRANSPORT** | | | | | | | | | | | | | |
| 3PL Carriers / Subcontracted Loads | 25,916 | 25,955 | 25,994 | 26,032 | 26,072 | 26,111 | 26,150 | 26,189 | 26,228 | 26,268 | 26,307 | 26,347 | 313,567 |
| Driver / Office Admin Salaries – Excludes Insiders | 73,601 | 73,711 | 73,822 | 73,932 | 74,043 | 74,154 | 74,265 | 74,377 | 74,488 | 74,600 | 74,712 | 74,824 | 890,530 |
| Payroll Taxes (10%) | 7,360 | 7,371 | 7,382 | 7,393 | 7,404 | 7,415 | 7,427 | 7,438 | 7,449 | 7,460 | 7,471 | 7,482 | 89,053 |
| Fuel (diesel/gas, DEF, and fuel card fees) | 80,000 | 80,000 | 84,999 | 87,469 | 91,511 | 91,387 | 98,369 | 100,042 | 102,815 | 102,969 | 103,124 | 96,955 | 1,119,641 |
| Truck Maintenance & Repairs | 20,733 | 20,764 | 20,795 | 20,826 | 20,857 | 20,889 | 20,920 | 20,951 | 21,507 | 21,802 | 26,833 | 21,077 | 257,954 |
| Truck Insurance (Auto, Cargo, Liability) | 24,361 | 24,397 | 24,434 | 24,471 | 24,507 | 24,544 | 24,581 | 24,618 | 24,655 | 24,692 | 24,729 | 24,766 | 294,753 |
| Claims & Damages | 1,037 | 1,038 | 1,040 | 1,041 | 1,043 | 1,044 | 1,046 | 1,048 | 1,049 | 1,051 | 1,052 | 1,054 | 12,543 |
| Truck Washes / Detailing | 2,592 | 2,595 | 2,599 | 2,603 | 2,607 | 2,611 | 2,615 | 2,619 | 2,623 | 2,627 | 2,631 | 2,635 | 31,357 |
| Tolls & Scales | 207 | 208 | 208 | 208 | 209 | 209 | 209 | 210 | 210 | 210 | 210 | 211 | 2,509 |
| Permits / Registration | 518 | 519 | 520 | 521 | 521 | 522 | 523 | 524 | 525 | 525 | 526 | 527 | 6,271 |
| Dispatch Software / Load Boards | 674 | 675 | 676 | 677 | 678 | 679 | 680 | 681 | 682 | 683 | 684 | 685 | 8,153 |
| GPS Subscription (CalAmp) | 288 | 289 | 289 | 289 | 290 | 290 | 291 | 291 | 292 | 292 | 293 | 293 | 3,487 |
| **Total Cost of Transport** | 237,285 | 237,521 | 242,756 | 245,463 | 249,742 | 249,856 | 257,076 | 258,987 | 262,522 | 263,179 | 268,572 | 256,855 | 3,029,816 |
| **OFFICE & OVERHEAD** | | | | | | | | | | | | | |
| Office Rent | 3,454 | 3,460 | 3,467 | 3,474 | 3,480 | 3,487 | 3,493 | 3,500 | 3,507 | 3,513 | 3,520 | 3,527 | 41,882 |
| Utilities | 837 | 839 | 840 | 842 | 844 | 845 | 847 | 848 | 850 | 852 | 853 | 855 | 10,153 |
| Office Supplies / Technology | 1,256 | 1,258 | 1,261 | 1,263 | 1,266 | 1,268 | 1,270 | 1,273 | 1,275 | 1,278 | 1,280 | 1,282 | 15,230 |
| Marketing / Sales / Website / Client Outreach | 209 | 210 | 210 | 211 | 211 | 211 | 212 | 212 | 213 | 213 | 213 | 214 | 2,538 |
| Hotel / Food (for long hauls) | 523 | 524 | 525 | 526 | 527 | 528 | 529 | 530 | 531 | 532 | 533 | 534 | 6,346 |
| Insider Payments / Salary | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 240,000 |
| Misc. Equipment | 209 | 210 | 210 | 211 | 211 | 211 | 212 | 212 | 213 | 213 | 213 | 214 | 2,538 |
| **Total Office & Overhead** | 26,489 | 26,501 | 26,514 | 26,526 | 26,538 | 26,551 | 26,563 | 26,576 | 26,588 | 26,601 | 26,613 | 26,626 | 318,687 |
| **REORGANIZATION PAYMENTS** | | | | | | | | | | | | | |
| Legal Fees, Accounting and UST Fees | | | | | | | | | | | | | - |
| Priority Internal Revenue Service | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 15,625 |
| Franchise Tax Board | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 3,284 |
| Riverside County Tax Collector | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 18,720 |
| EDD | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 1,773 |
| Harvest Bank Loan Against Arlington | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 285,012 |
| Harvest Bank Arrears | - | - | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 31,318 |
| Peterbilt – Huntington Bank 528 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 65,143 |
| Peterbilt – Huntington Bank 529 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 70,874 |
| Peterbilt – Huntington Bank 526 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 66,629 |
| Peterbilt – Continental Bank- Claim No. 10 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 68,628 |
| Peterbilt – Paccar Financial (1) | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 78,384 |
| Peterbilt – Paccar Financial (2) | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 66,048 |
| Dodge Ram | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 15,072 |
| Freightliner Truck (1) | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 38,940 |
| Freightliner Truck (2) | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 39,898 |
| JB Bostick | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 24,048 |
| Unsecured Total Claims | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 75,297 |
| Small Business Administration | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 118,080 |
| **Total Reorganization Payments** | 87,621 | 87,621 | 90,753 | 90,753 | 90,753 | 90,753 | 90,753 | 90,753 | 90,753 | 90,753 | 90,753 | 90,753 | 1,082,774 |
| **TOTAL EXPENSES** | 351,396 | 351,644 | 360,023 | 362,743 | 367,034 | 367,160 | 374,392 | 376,315 | 379,864 | 380,533 | 385,938 | 374,234 | 4,431,277 |
| **TOTAL NET INCOME** | 4,730 | 7,543 | 2,251 | 2,645 | 1,493 | 4,534 | 495 | 1,792 | 1,492 | 2,098 | 1,996 | 1,619 | 32,689 |

## Westside Tow & Transport – 2029 Annual Budget Projections
July 2029 – June 2030

| | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | ANNUAL TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| Income (projected monthly revenue) | 361,126 | 364,412 | 367,728 | 371,073 | 374,449 | 375,855 | 381,674 | 385,145 | 388,647 | 388,181 | 395,746 | 381,851 | 4,535,887 |
| **Total Income** | **361,126** | **364,412** | **367,728** | **371,073** | **374,449** | **375,855** | **381,674** | **385,145** | **388,647** | **388,181** | **395,746** | **381,851** | **4,535,887** |
| **COST OF TRANSPORT** | | | | | | | | | | | | | |
| 3PL Carriers / Subcontracted Loads | 26,481 | 26,523 | 26,566 | 26,608 | 26,651 | 26,694 | 26,736 | 26,779 | 26,822 | 26,865 | 26,908 | 26,951 | 320,584 |
| Driver / Office Admin Salaries – Excludes Insiders | 75,206 | 75,327 | 75,447 | 75,568 | 75,689 | 75,810 | 75,931 | 76,053 | 76,174 | 76,296 | 76,418 | 76,540 | 910,459 |
| Payroll Taxes (10%) | 7,521 | 7,533 | 7,545 | 7,557 | 7,569 | 7,581 | 7,593 | 7,605 | 7,617 | 7,630 | 7,642 | 7,654 | 91,046 |
| Fuel (diesel/gas, DEF, and fuel card fees) | 83,500 | 86,500 | 86,870 | 89,404 | 93,545 | 93,428 | 101,598 | 102,296 | 105,142 | 105,310 | 105,479 | 99,179 | 1,152,251 |
| Truck Maintenance & Repairs | 21,185 | 21,219 | 21,253 | 21,287 | 21,321 | 21,355 | 21,389 | 21,423 | 21,994 | 22,298 | 27,446 | 21,561 | 263,729 |
| Truck Insurance (Auto, Cargo, Liability) | 24,892 | 24,932 | 24,972 | 25,012 | 25,052 | 25,092 | 25,132 | 25,172 | 25,213 | 25,253 | 25,293 | 25,334 | 301,349 |
| Claims & Damages | 1,059 | 1,061 | 1,063 | 1,064 | 1,066 | 1,068 | 1,069 | 1,071 | 1,073 | 1,075 | 1,076 | 1,078 | 12,823 |
| Truck Washes / Detailing | 2,648 | 2,652 | 2,657 | 2,661 | 2,665 | 2,669 | 2,674 | 2,678 | 2,682 | 2,686 | 2,691 | 2,695 | 32,058 |
| Tolls & Scales | 212 | 212 | 213 | 213 | 213 | 214 | 214 | 214 | 215 | 215 | 215 | 216 | 2,565 |
| Permits / Registration | 530 | 530 | 531 | 532 | 533 | 534 | 535 | 536 | 536 | 537 | 538 | 539 | 6,412 |
| Dispatch Software / Load Boards | 689 | 690 | 691 | 692 | 693 | 694 | 695 | 696 | 697 | 698 | 700 | 701 | 8,335 |
| GPS Subscription (CalAmp) | 294 | 295 | 295 | 296 | 296 | 297 | 297 | 298 | 298 | 299 | 299 | 300 | 3,565 |
| **Total Cost of Transport** | **244,217** | **247,474** | **248,102** | **250,894** | **255,293** | **255,434** | **263,864** | **264,822** | **268,464** | **269,162** | **274,705** | **262,747** | **3,105,176** |
| **OFFICE & OVERHEAD** | | | | | | | | | | | | | |
| Office Rent | 3,533 | 3,540 | 3,547 | 3,554 | 3,560 | 3,567 | 3,574 | 3,581 | 3,587 | 3,594 | 3,601 | 3,608 | 42,847 |
| Utilities | 857 | 858 | 860 | 861 | 863 | 865 | 866 | 868 | 870 | 871 | 873 | 875 | 10,387 |
| Office Supplies / Technology | 1,285 | 1,287 | 1,290 | 1,292 | 1,295 | 1,297 | 1,300 | 1,302 | 1,305 | 1,307 | 1,309 | 1,312 | 15,581 |
| Marketing / Sales / Website / Client Outreach | 214 | 215 | 215 | 215 | 216 | 216 | 217 | 217 | 217 | 218 | 218 | 219 | 2,597 |
| Hotel / Food (for long hauls) | 535 | 536 | 537 | 538 | 539 | 540 | 541 | 543 | 544 | 545 | 546 | 547 | 6,492 |
| Insider Payments / Salary | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 240,000 |
| Misc. Equipment | 214 | 215 | 215 | 215 | 216 | 216 | 217 | 217 | 217 | 218 | 218 | 219 | 2,597 |
| **Total Office & Overhead** | **26,638** | **26,651** | **26,664** | **26,676** | **26,689** | **26,702** | **26,715** | **26,727** | **26,740** | **26,753** | **26,766** | **26,779** | **320,500** |
| **REORGANIZATION PAYMENTS** | | | | | | | | | | | | | |
| Legal Fees, Accounting and UST Fees | | | | | | | | | | | | | - |
| Priority Internal Revenue Service | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 15,625 |
| Franchise Tax Board | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 3,284 |
| Riverside County Tax Collector | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 18,720 |
| EDD | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 1,773 |
| Harvest Bank Loan Against Arlington | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 285,012 |
| Harvest Bank Arrears | - | - | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 31,318 |
| Peterbilt – Huntington Bank 528 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 65,143 |
| Peterbilt – Huntington Bank 529 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 70,874 |
| Peterbilt – Huntington Bank 526 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 66,629 |
| Peterbilt – Continental Bank- Claim No. 10 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 68,628 |
| Peterbilt – Paccar Financial (1) | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 78,384 |
| Peterbilt – Paccar Financial (2) | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 66,048 |
| Dodge Ram | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 15,072 |
| Freightliner Truck (1) | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 38,940 |
| Freightliner Truck (2) | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 39,898 |
| JB Bostick | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 24,048 |
| Unsecured Total Claims | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 75,297 |
| Small Business Administration | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 118,080 |
| **Total Reorganization Payments** | **87,621** | **87,621** | **90,753** | **90,753** | **90,753** | **90,753** | **90,753** | **90,753** | **90,753** | **90,753** | **90,753** | **90,753** | **1,082,774** |
| **TOTAL EXPENSES** | **358,477** | **361,746** | **365,519** | **368,323** | **372,735** | **372,889** | **381,331** | **382,302** | **385,957** | **386,668** | **392,224** | **380,279** | **4,508,450** |
| **TOTAL NET INCOME** | **2,649** | **2,666** | **2,209** | **2,750** | **1,714** | **2,966** | **342** | **2,843** | **2,690** | **1,513** | **3,522** | **1,572** | **27,437** |

## Westside Tow & Transport – 2030 Annual Budget Projections
July 2030 – June 2031

| | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | ANNUAL TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| Income (projected monthly revenue) | 365,126 | 368,412 | 371,728 | 375,073 | 378,449 | 379,855 | 386,674 | 389,145 | 392,647 | 392,181 | 399,746 | 385,851 | 4,584,887 |
| **Total Income** | **365,126** | **368,412** | **371,728** | **375,073** | **378,449** | **379,855** | **386,674** | **389,145** | **392,647** | **392,181** | **399,746** | **385,851** | **4,584,887** |
| **COST OF TRANSPORT** | | | | | | | | | | | | | |
| 3PL Carriers / Subcontracted Loads | 26,994 | 27,037 | 27,080 | 27,124 | 27,167 | 27,211 | 27,254 | 27,298 | 27,341 | 27,385 | 27,429 | 27,473 | 326,794 |
| Driver / Office Admin Salaries – Excludes Insiders | 76,663 | 76,786 | 76,908 | 77,032 | 77,155 | 77,278 | 77,402 | 77,526 | 77,650 | 77,774 | 77,898 | 78,023 | 928,094 |
| Payroll Taxes (10%) | 7,666 | 7,679 | 7,691 | 7,703 | 7,715 | 7,728 | 7,740 | 7,753 | 7,765 | 7,777 | 7,790 | 7,802 | 92,809 |
| Fuel (diesel/gas, DEF, and fuel card fees) | 80,000 | 80,000 | 88,553 | 91,136 | 95,357 | 95,237 | 102,566 | 104,278 | 107,179 | 107,350 | 107,522 | 101,100 | 1,160,277 |
| Truck Maintenance & Repairs | 21,595 | 21,630 | 21,664 | 21,699 | 21,734 | 21,769 | 21,803 | 21,838 | 22,420 | 22,730 | 27,978 | 21,978 | 268,838 |
| Truck Insurance (Auto, Cargo, Liability) | 25,374 | 25,415 | 25,456 | 25,496 | 25,537 | 25,578 | 25,619 | 25,660 | 25,701 | 25,742 | 25,783 | 25,825 | 307,186 |
| Claims & Damages | 1,080 | 1,081 | 1,083 | 1,085 | 1,087 | 1,088 | 1,090 | 1,092 | 1,094 | 1,095 | 1,097 | 1,099 | 13,072 |
| Truck Washes / Detailing | 2,699 | 2,704 | 2,708 | 2,712 | 2,717 | 2,721 | 2,725 | 2,730 | 2,734 | 2,739 | 2,743 | 2,747 | 32,679 |
| Tolls & Scales | 216 | 216 | 217 | 217 | 217 | 218 | 218 | 218 | 219 | 219 | 219 | 220 | 2,614 |
| Permits / Registration | 540 | 541 | 542 | 542 | 543 | 544 | 545 | 546 | 547 | 548 | 549 | 549 | 6,536 |
| Dispatch Software / Load Boards | 702 | 703 | 704 | 705 | 706 | 707 | 709 | 710 | 711 | 712 | 713 | 714 | 8,497 |
| GPS Subscription (CalAmp) | 300 | 301 | 301 | 302 | 302 | 303 | 303 | 304 | 304 | 305 | 305 | 306 | 3,634 |
| **Total Cost of Transport** | **243,830** | **244,092** | **252,908** | **255,753** | **260,238** | **260,382** | **267,975** | **269,951** | **273,664** | **274,376** | **280,026** | **267,837** | **3,151,030** |
| **OFFICE & OVERHEAD** | | | | | | | | | | | | | |
| Office Rent | 3,615 | 3,622 | 3,629 | 3,635 | 3,642 | 3,649 | 3,656 | 3,663 | 3,670 | 3,677 | 3,684 | 3,691 | 43,834 |
| Utilities | 876 | 878 | 880 | 881 | 883 | 885 | 886 | 888 | 890 | 891 | 893 | 895 | 10,626 |
| Office Supplies / Technology | 1,314 | 1,317 | 1,319 | 1,322 | 1,324 | 1,327 | 1,330 | 1,332 | 1,335 | 1,337 | 1,340 | 1,342 | 15,940 |
| Marketing / Sales / Website / Client Outreach | 219 | 219 | 220 | 220 | 221 | 221 | 222 | 222 | 222 | 223 | 223 | 224 | 2,657 |
| Hotel / Food (for long hauls) | 548 | 549 | 550 | 551 | 552 | 553 | 554 | 555 | 556 | 557 | 558 | 559 | 6,641 |
| Insider Payments / Salary | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 240,000 |
| Misc. Equipment | 219 | 219 | 220 | 220 | 221 | 221 | 222 | 222 | 222 | 223 | 223 | 224 | 2,657 |
| **Total Office & Overhead** | **26,791** | **26,804** | **26,817** | **26,830** | **26,843** | **26,856** | **26,869** | **26,882** | **26,895** | **26,908** | **26,922** | **26,935** | **322,354** |
| **REORGANIZATION PAYMENTS** | | | | | | | | | | | | | |
| Legal Fees, Accounting and UST Fees | | | | | | | | | | | | | - |
| Priority Internal Revenue Service | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 1,302 | 15,625 |
| Franchise Tax Board | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 3,284 |
| Riverside County Tax Collector | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 1,560 | 18,720 |
| EDD | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 148 | 1,773 |
| Harvest Bank Loan Against Arlington | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 23,751 | 285,012 |
| Harvest Bank Arrears | - | - | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 3,132 | 31,318 |
| Peterbilt – Huntington Bank 528 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 5,429 | 65,143 |
| Peterbilt – Huntington Bank 529 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 5,906 | 70,874 |
| Peterbilt – Huntington Bank 526 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 5,552 | 66,629 |
| Peterbilt – Continental Bank- Claim No. 10 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 5,719 | 68,628 |
| Peterbilt – Paccar Financial (1) | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 6,532 | 78,384 |
| Peterbilt – Paccar Financial (2) | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 5,504 | 66,048 |
| Dodge Ram | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 1,256 | 15,072 |
| Freightliner Truck (1) | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 3,245 | 38,940 |
| Freightliner Truck (2) | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 3,325 | 39,898 |
| JB Bostick | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 2,004 | 24,048 |
| Unsecured Total Claims | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 6,275 | 75,297 |
| Small Business Administration | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 9,840 | 118,080 |
| **Total Reorganization Payments** | **87,621** | **87,621** | **90,753** | **90,753** | **90,753** | **90,753** | **90,753** | **90,753** | **90,753** | **90,753** | **90,753** | **90,753** | **1,082,774** |
| **TOTAL EXPENSES** | **358,243** | **358,518** | **370,478** | **373,337** | **377,834** | **377,991** | **385,597** | **387,586** | **391,312** | **392,037** | **397,701** | **385,525** | **4,556,158** |
| **TOTAL NET INCOME** | **6,883** | **9,895** | **1,250** | **1,737** | **615** | **1,864** | **1,077** | **1,558** | **1,335** | **144** | **2,046** | **326** | **28,729** |

EXHIBIT "D"

## LIST OF UNSECURED CLAIMS

| Description of Claim | Insiders (Y/N) | Impaired (Y/N) | Treatment Under Plan | Disputed/Contingent/ Unliquidated |
|---|---|---|---|---|
| Capital One N.A. by AIS Info Source LP as agent<br><br>(Claim No. 5-1) in the amount of $4,810.99. | N | Y<br><br>Impaired; claims in this class are entitled to vote on the Plan | • **Payment Amount**: Allowed General Unsecured Claims shall receive a 20% pro-rata distribution from Net Proceeds, after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.<br>• **Begin Date**: First business day after the Effective Date of Plan.<br>• **End Date**: The creditors shall be paid pro-rata for a period of 5 years. | |
| American Funding Services, Inc. c/o Breuer Law, PLLC<br><br>(Claim No. 9-1) in the amount of $82,971.25. | N | Y<br><br>Impaired; claims in this class are entitled to vote on the Plan | • **Payment Amount**: Allowed General Unsecured Claims shall receive a 20% pro-rata distribution from Net Proceeds, after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.<br>• **Begin Date**: First business day after the Effective Date of Plan.<br>• **End Date**: The creditors shall be paid pro-rata for a period of 5 years. | • **Debtor will file an objection to this claim. The interest requested on the claim amount under the terms of the contract is usurious.** |
| Arch & Beam Global LLC as Trustee of the Shift Technologies Liquidating Trust $27,400.00 | N | Y<br><br>Impaired; claims in this class are entitled to vote on the Plan | • **Payment Amount**: Allowed General Unsecured Claims shall receive a 20% pro-rata distribution from Net Proceeds, after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.<br>• **Begin Date**: First business day after the Effective Date of Plan.<br>• **End Date**: The creditors shall be paid pro-rata for a period of 5 years. | • **Debtor objects that services were provided and new value in lieu of payment received within the preferential period.** |
| CFG Merchant Solutions LLC, c/o | N | Y | • **Payment Amount**: Allowed General Unsecured Claims shall receive a 20% pro-rata distribution from Net Proceeds, | • **Debtor will file an objection to this claim. The interest requested on** |

| | | | | |
|---|---|---|---|---|
| **Kaminski Law PLLC,**<br><br>**$63,924.00** | | Impaired; claims in this class are entitled to vote on the Plan | after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.<br><br>• **Begin Date**: First business day after the Effective Date of Plan.<br><br>• **End Date**: The creditors shall be paid pro-rata for a period of 5 years. | **the claim amount under the terms of the contract is usurious.** |
| **RDM Capital Funding LLC DBA FinTap**<br><br>**c/o Kaminski Law PLLC,**<br><br>**$197,380.00** | N | Y<br><br>Impaired; claims in this class are entitled to vote on the Plan | • **Payment Amount**: Allowed General Unsecured Claims shall receive a 20% pro-rata per year distribution from Net Proceeds, after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.<br><br>• **Begin Date**: First business day after the Effective Date of Plan.<br><br>• **End Date**: The creditors shall be paid pro-rata for a period of 5 years. | **Debtor will file an objection to this claim. The interest requested on the claim amount under the terms of the contract is usurious.** |
| **American Express Credit Card**<br><br>**$27,020.33** | N | Y<br><br>Impaired; claims in this class are entitled to vote on the Plan | • **Payment Amount**: Allowed General Unsecured Claims shall receive a 20% pro-rata per year distribution from Net Proceeds, after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.<br><br>• **Begin Date**: First business day after the Effective Date of Plan.<br><br>• **End Date**: The creditors shall be paid pro-rata for a period of 5 years. | |
| **Bank of America Credit Card**<br><br>**$45,785.44** | N | Y<br><br>Impaired; claims in this class are entitled to vote on the Plan | • **Payment Amount**: Allowed General Unsecured Claims shall receive a 20% pro-rata per year distribution from Net Proceeds, after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.<br><br>• **Begin Date**: First business day after the Effective Date of Plan.<br><br>• **End Date**: The creditors shall be paid pro-rata for a period of 5 years. | |

| | | | | |
|---|---|---|---|---|
| **Bonafide Truck and Heavy Equipment**<br><br>**$6,756.74** | N | Y<br><br>Impaired; claims in this class are entitled to vote on the Plan | • **Payment Amount**: Allowed General Unsecured Claims shall receive a 20% pro-rata with per year distribution from Net Proceeds, after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.<br><br>• **Begin Date**: First business day after the Effective Date of Plan.<br><br>• **End Date**: The creditors shall be paid pro-rata for a period of 5 years. | |
| **Green Note Capital**<br><br>**$132,602.50** | N | Y<br><br>Impaired; claims in this class are entitled to vote on the Plan | • **Payment Amount**: Allowed General Unsecured Claims shall receive a 20% pro-rata per year distribution from Net Proceeds, after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.<br><br>• **Begin Date**: First business day after the Effective Date of Plan.<br><br>• **End Date**: The creditors shall be paid pro-rata for a period of 5 years. | |
| **Ross-Stern & Associates**<br><br>**$109,000** | N | Y<br><br>Impaired; claims in this class are entitled to vote on the Plan | • **Payment Amount**: Allowed General Unsecured Claims shall receive a 20% pro-rata per year distribution from Net Proceeds, after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.<br><br>• **Begin Date**: First business day after the Effective Date of Plan.<br><br>• **End Date**: The creditors shall be paid pro-rata for a period of 5 years. | |
| **Tramco Management Co. 2, LLC**<br><br>**$7,270.81** | N | Y<br><br>Impaired; claims in this class are entitled to | • **Payment Amount**: Allowed General Unsecured Claims shall receive a 20% pro-rata per year distribution from Net Proceeds, after payment of all Allowed Secured Claims, Allowed Administrative Claims and Allowed Priority Claims.<br><br>• **Begin Date**: First business day after the Effective Date of | |

| | | vote on the Plan | Plan. <br><br> • **End Date**: The creditors shall be paid pro-rata for a period of 5 years. | |
|---|---|---|---|---|
| **Total Amount of Claims: $704,922.06** | | | | |

EXHIBIT "E"

**Fill in this information to identify the case:**

Debtor name  **Westside Tow & Transport, Inc.**

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)  **9:25-bk-11352**

☒ Check if this is an
amended filing

## Official Form 206G
# Schedule G: Executory Contracts and Unexpired Leases                12/15

**Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.**

1.  **Does the debtor have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the debtor's other schedules.   There is nothing else to report on this form.
    ☒ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal*      *Property*
    (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|---|
| **2.1.** | State what the contract or lease is for and the nature of the debtor's interest | **Lease of 9500 Arlington Avenue, Riverside, CA 92503 entered into on January 12, 2024 and remaining terms through January 12, 2027.** | |
| | State the term remaining | **1 year 3 months 4 days** | **Pacific Coast Home Center Corporation** |
| | List the contract number of any government contract | | **9500 Arlington Avenue Riverside, CA 92503** |
| **2.2.** | State what the contract or lease is for and the nature of the debtor's interest | **Lease of Westlake Gardens Office Park, 2535 Townsgate Road, Westlake Village, CA 91361- One Thousand One Hundred Three (1,103) square feet** | |
| | State the term remaining | **1 year and 11 months** | **Tramco Management Co. 2, LLC c/o The Johnston Group 5142 Clareton Drive, Suite 240** |
| | List the contract number of any government contract | | **Agoura Hills, CA 91301** |

Official Form 206G                **Schedule G: Executory Contracts and Unexpired Leases**                Page 1 of 1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**1122 E. GREEN ST
PASADENA, CA  91106**

A true and correct copy of the foregoing document(s) entitled:  **"DEBTOR'S DISCLOSURE STATEMENT DESCRIBING ITS CHAPTER 11 PLAN OF REORGANIZATION"** will be served or was served in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document(s) will be served by the court via NEF and hyperlink to the document. On March 25, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Brian David Fittipaldi    brian.fittipaldi@usdoj.gov
Raffi Khatchadourian    raffi@hemar-rousso.com
Elan S Levey    elan.levey@usdoj.gov, usacac.tax@usdoj.gov;caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
Randall P Mroczynski    randym@cookseylaw.com
Joshua Nyman    josh@ramsaurlaw.com
Tamar Terzian    tamar@terzlaw.com, tkouyoum@gmail.com
United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov
Jennifer C Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:  On March 25, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy/copies thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 25, 2026 | Kathleen Fox | /s/ Kathleen Fox |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-9
Case 9:25-bk-11352-RC
Central District of California
Santa Barbara
Wed Mar 25 20:47:53 PDT 2026

BMW Financial Services NA, LLC
c/o McCarthy & Holthus, LLP
2763 Camino Del Rio South, Suite 100
San Diego, CA 92108-3708

Continental Bank
c/o Ramsaur Law P.C.
3070 Bristol St
Suite 640
Suite 640
Costa Mesa, CA 92626-3067

Stellantis Financial Services, Inc.
c/o Randall P. Mroczynski
Cooksey, Toolen, Gage, Duffy & Woog
535 Anton Boulevard, Suite 1000
Costa Mesa, CA 92626-7664

TD Bank, N.A. successor in interest to TD Au
c/o Randall P. Mroczynski
Cooksey, Toolen, Gage, Duffy & Woog
535 Anton Boulevard, Suite 1000
Costa Mesa, CA 92626-7664

Westside Tow and Transport Inc.
2535 Townsgate Road
Westlake Village, CA 91361-5965

Northern Division
1415 State Street,
Santa Barbara, CA 93101-2511

American Express Credit Card
43 Butterfield Circle
El Paso, TX 79906-5202

American Funding Services
14511 Myford Road Suite 100
Tustin CA 92780-7057

American Funding Services, Inc.
c/o Breuer Law, PLLC
6501 Congress Ave., Ste. 240
Boca Raton, FL 33487-2840

American Funding Services-McA
14511 Myford Road Suite 100
Tustin, CA 92780-7057

Arch & Beam Global LLC
as Trustee of the Shift Technologies
Liquidating Trust
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121-1169

BMW Bank of North America c/o AIS Portfolio
4515 N. Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

(p)BMW FINANCIAL SERVICES
CUSTOMER SERVICE CENTER
PO BOX 3608
DUBLIN OH 43016-0306

Bank of America Credit Card
1825 E. Buckeye Road
Phoenix, AZ 85034-4216

Bell Bank
15490 101st Avenue North
Suite 200
Osseo MN 55369-7563

Bonafide Truck and Heavy Equipment
Altus Receivables Management
2121 Airline Drive Suite 520
Metairie, LA 70001-5984

CFG Merchant Solutions
80 Maiden Lane, 15th Floor
New York NY 10038-4883

CFG Merchant Solutions LLC
c/o Kaminski Law PLLC
P. O. Box 247
Grass Lake, MI 49240-0247

Capital One N.A.
by AIS InfoSource LP as agent
PO Box 71083
Charlotte, NC  28272-1083

Capital West LLC
9100 Wilshire Blvd 725E
Beverly Hills CA 90212-3431

Continental Bank
15 W South TempleSuite 300
Salt Lake City UT 84101-1542

Corporation Service Company
801 Adlai Stevenson Drive
Springfield IL 62703-4261

County of Riverside Tax Collector
PO Box 12005
Riverside CA 92502-2205

Employment Development Department
Bankruptcy Group MIC 92E, PO BOX 826880
Sacramento, CA 95814

Eudora F. S. Arthur
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601-3034

Fintap- MCA
777 Passaic Ave Suite 375
Clifton NJ 07012-1875

Franchise Tax Board
Bankruptcy Section MS A340
PO BOX 2952
Sacramento CA 95812-2952

Gil Hopenstand
312 N. Spring St., 5th Floor
Los Angeles, CA 90012-4701

Green Note Capital
1019 Avenue P Suite 401
Brooklyn NY 11223-2366

Harvest Small Business Finance LLC
24422 Avenida De La Carlota
Suite 400
Laguna Hills CA 92653-3634

Harvest Small Business Finance, LLC
Hemar, Rousso & Heald, LLP
c/o Raffi Khatchadourian, Esq.
15910 Ventura Boulevard, 12th Floor
Encino, CA 91436-2829

Huntington Bank
7 Easton Oval
Columbus OH 43219-6060

Huntington National Bank
7 Easton Oval
Columbus, OH 43219-6060

Huntington National Bank
Attn: GWHuntington National Bank
Attn: GW4W34 5555 Cleveland Avenue
Columbus, OH 43231

Ian Goldberg
777 Passaic Ave, Suite
Clifton, NJ 07012-1804

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

JB Bostick
2870 East La Cresta
Anaheim, CA 92806-1816

JB Bostick Paving
2870 E La Cresta Avenue
Anaheim CA 92806-1816

PACCAR Financial Corporation
2180 Satelite Blvd
Suite 200
Duluth GA 30097-4927

PACCAR Financial Corporation2180 Satelite Bl
Suite 200
Duluth GA 30097

Pacaar Financial Corp.
2501 S. State Hwy 121, Suite 800
Lewisville, TX 75067-8229

Pacific Coast Home Center Corporation
9500 Arlington Avenue
Riverside, CA 92503-1260

RDM Capital Funding LLC DBA FinTap
c/o Kaminski Law PLLC
P. O. Box 247
Grass Lake, MI 49240-0247

Rich Ogle
5500 Wayzata Blvd.
Minneapolis, MN 55416-1241

Rosewood Business Ventures LLC
99 Washington Avenue
Suite 700
Dover DE 19904

Rosewood Business Ventures, LLC
99 Washington Ave, Ste 700
Albany, NY 12210-2822

Ross-stern & Associates, Accounting
18520 Burbank Blvdw 4104
Tarzana, CA 91356-2685

Rubin Law Firm for Capital West, LLC
375 W 200 S Suite 225
Salt Lake City, UT 84101

STELLANTIS FINANCIAL SERVICES c/o PERITUS PO
P.O. BOX 1149
GRAPEVINE, TX 76099-1149

STEPHEN C. BREUER
c/Breuer Law, PLLC
6501 Congress Ave., Suite 240
Boca Raton, FL 33487-2840

Sean Morrow
180 Maiden Lane 15th Floor
New York, NY 10038-5150

Sheala Vast-Binder
4001 Savoy Way
McKinney TX 75071-3788

Small Business Administration
PO Box 3500
Newark OH 43058-3500

Stellantis Financial
3065 Akers Mill Road SE
Suite 700
Atlanta GA 30339-3124

Stellantis Financial Services, Inc.
5757 Woodway Dr Suite 400
Houston, TX 77057-1520

Stephen Breuer
6501 Congress Avenue
Suite 240
Boca Raton, FL 33487-2840

TD Bank
P.O. BOX 34084140 Church Road
Mount Laurel, NJ 08054

TD Bank, N.A.
P. O. Box 16041
Lewiston, ME 04243-9523

Tamar Terzian
Terzian Law Group apc
1122 E. Green Street
Pasadena CA 91106-2500

The Huntington National Bank C/O Eudora Arth
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601-3034

Tramco Management Co. 2, LLC
c/o The Johnston Group
5142 Clareton Drive, Suite 240
Agoura Hills, CA 91301-4446

Tyra Patton
5757 Woodway Dr, Suite 400 77057-1514

(p)U S  SMALL BUSINESS ADMINISTRATION
312 N SPRING ST 5TH FLOOR
LOS ANGELES CA 90012-4701

United States Trustee (ND)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Westside Tow & Trucking, Inc.
c/o Ramsaur Law P.C.
3070 Bristol Street, Ste 640
Costa Mesa, CA 92626-3067

Tamar Terzian
Terzian Law Group, APC
1122 East Green Street
Suite 200
Pasadena, CA 91106-2500

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

BMW Financial Services
P.O. B0X 3608
Dublinp OH 43016

(d)BMW Financial Services
P.O. Box 3608
Dublin OH 43016

U.S. Small Business Administration
Office of General Counsel
312 North Spring Street 5th Floor
Los Angeles, CA 90012

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(d)PACCAR Financial Corporation
2180 Satelite Blvd
Suite 200
Duluth, GA 30097-4927

(d)Westside Tow and Transport Inc
2535 Townsgate Road
Westlake Village CA 91361-5965

End of Label Matrix
Mailable recipients    66
Bypassed recipients     3
Total                  69